## WESTERN AND ATLANTIC RAILROAD CO. *v.* HUNT.

Where the record constrains the conclusion by this court that the plaintiff's
own evidence does not sustain the theory set up in her declaration (that for
the defendant being against this theory), this court must hold that a verdict
rendered in her favor is an illegal one, and reverse the judgment of the court
below denying the defendant's motion for a new trial containing the general
grounds.

Argued October 10,— Decided October 30, 1902.

Action for damages.  Before Judge Fite.  Gordon superior court.
May 8, 1902.

*Payne & Tye* and *Starr & Erwin*, for plaintiff in error.
*W. R. Rankin* and *Cantrell & Ramsaur*, contra.

ADAMS, J.  Mrs. Hunt obtained against the railroad company a
verdict in a case in which personal injuries were claimed.  The
motion for a new trial contained, among others, the general grounds
that the verdict was contrary to law and the evidence, and a bill
of exceptions was taken to the judgment of the court overruling
this motion.  We are constrained to reverse the judgment of the
court below, upon the ground that the plaintiff's evidence did not
sustain her case, particularly in the light of the great weight of
testimony introduced in behalf of the railroad company.  We fully
recognize that questions of fact are for the jury, and that their
discretion as to the facts is a wide one.  We believe, also, that
they are better judges of the facts than are courts, and we have
great respect for their verdicts.  They are often affirmed in cases
where it seems clear to the members of the appellate court that if
they had been in the jury-box they would have rendered a differ-
ent verdict.  We recognize, also, that the discretion to set aside a
verdict on the ground that it is strongly and decidedly against the
weight of the evidence is reposed by law in the presiding judge,

whose opportunities for determining this question are necessarily very much better than those of this court. At the same time this discretion is a legal, and not an arbitrary one. If, under any reasonable view of the evidence, the verdict can not be sustained, it is an illegal verdict — as completely so as if it were rendered in the teeth of a positive statute. In this event, a judgment of reversal does not mean that this court substitutes its opinion for that of the jury, or that it invades the province of either the jury or the presiding judge. It means only that in the opinion of this court the presiding judge has not made a legal use of the discretion placed in him by law. In the Civil Code, § 5477, it is provided that "In any case when the verdict of the jury is found contrary to the evidence and the principles of justice and equity, the presiding judge may grant a new trial before another jury." Section 5482 provides that "The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of evidence, although there may appear to be some slight evidence in favor of the finding." It will be seen that this discretion is placed in the presiding judge, who, because he has seen the witnesses and their manner of testifying, and has become possessed of the facts in the case as no appellate court reading a record can be, has a much better opportunity of determining whether or not a verdict ought to be sustained than that enjoyed by this court. But this court has held more than once that this discretion is not arbitrary, but is one to be exercised according to legal principles. A case must be an exceptional one to justify the interference, and this court will not interfere unless the record requires a conclusion like that announced in the headnote.

The declaration of the plaintiff proceeds upon the idea that the company's agents, against her will, forcibly and violently removed her from a moving train, in reckless, if not in wanton, disregard of her rights and her safety. The third paragraph of the petition, after setting forth that just before the train reached the station of the plaintiff's destination, she arose rapidly, with her babe in her arms, and went upon the platform in order to alight, then alleges: "When petitioner reached the platform the train had begun to move, and while petitioner stood on the steps, not feeling safe in stepping off with her babe in her arms while the train was in motion, the conductor and another employee of the said railroad company caught

29

petitioner and pulled her off the steps to the ground with great force." The fourth paragraph alleges that her injuries were " caused by being pulled violently to the ground as aforesaid by the conductor and other employee," and concludes as follows: " All of which petitioner charges was caused by the violent manner in which the employees of defendant took her from the said company's train." The sixth and most important paragraph of the petition is the only one that charges negligence upon the defendant company or mentions negligence in any way. This paragraph reads as follows: " Petitioner further charges that it was through the *willful* negligence of defendant's employee that the train was started before she was able to reach the door of the car and alight therefrom, *and that her injuries resulted from the forcible manner with which they took her from the car while in motion.* Petitioner charges that the conduct of defendant's employees in putting her off the train was aggravating both in act and intention, and that she is thereby injured in the sum of ten thousand dollars." We have quoted all of the declaration as it appears in the record which illustrates the theory upon which the plaintiff's case was based. No effort was made to show that it was through the willful negligence of any employee that the train was started. At most, so far as this feature of the case is concerned, the railroad company might be said to have started its train too quickly before giving this passenger a reasonable opportunity to alight.

The case, however, by the evidence and by the argument of counsel for the defendant in error, is predicated upon her forcible removal. Certainly this is the theory of the declaration, by which the plaintiff must stand or fall. An examination of the evidence of the plaintiff herself shows that she failed to sustain this theory. It must be borne in mind that this court has more than once ruled that where a party to a suit makes statements upon the stand concerning his or her case which are not harmonious, that one must be taken as true which bears most strongly against his or her right to recover. Concerning this point there are several statements. The plaintiff below says: " Train had started. Conductor took one arm and flagman the other and pulled me off. Train gave a lurch when I got to the door." Again: " I was undecided what to do, when conductor took one arm and flagman the other and *jumped me* to the ground with my baby." In another place she

states: "They pulled me to the ground with a great deal of force; having my baby, I couldn't well prevent the shock. I came down with a great deal of force." Immediately afterwards she says: "I had to steady myself. *I just jumped — just gave way little* — fell around." The truth of the matter is, according to her testimony, that she stood upon the steps of the platform, uncertain whether to alight or not while the train was in motion, and the conductor and another employee took hold of her and "jumped" her to the ground. It is not a case of her forcible removal, or one in which, against her will and her resistance, she was pulled violently to the ground. Her mother and two other lady passengers were helped to the ground by this same conductor and train-hand, just before this plaintiff. The mother testified concerning her daughter: "I got off before my daughter; she had the baby; she did not reach the ground before the cars began to move, and she stood on the steps uncertain what to do. She was *assisted* by the conductor and flagman; the conductor took her by one arm, the flagman by the other, and they *jumped* her from the steps of the car. She had her baby in her arms when she got off the car." This is all the testimony from the plaintiff's mother on the subject.

According to the conductor (whose testimony showed that he had been acting in this capacity for more than thirty-two years and had never before had any trouble, or even been a witness in a case against the railroad), the train-hand who assisted the conductor and the other two lady passengers who alighted at the same time, the plaintiff was assisted to the ground politely and gently, and nothing happened which could possibly have caused her any damage. This defense of the railroad company was supported by a great deal of corroborative evidence. If it served any useful purpose, it could be shown that the testimony adduced by the plaintiff in rebuttal merely corroborated her as to the fact that the train had started to move when she was on the steps. It is not consistent with the theory that any sort of violence, rudeness, or improper conduct was observed towards her. Recognizing, however, that the wide discretion of the jury could permit them to predicate the verdict upon the testimony of the plaintiff herself, no matter how great the preponderance on the other side, we have been careful to show what the theory of the plaintiff's declaration is, and her own evidence, which, in our opinion, does not sustain that theory. Re-

luctant as we are to interfere, or seem to interfere, with the discretion of the jury and of the presiding judge, we nevertheless feel bound to reverse the judgment of the court below denying the motion for a new trial.   This renders it unnecessary to consider the exceptions to the charge of the court with reference to the damages recoverable.   It appearing from the evidence that the plain-. tiff was living apart from her husband, it is perhaps not amiss to say that we do not discover any error in this charge that could have been prejudicial to the defendant company.

*Judgment reversed.   All the Justices concurring, except Lumpkin, P. J., absent.*