MACON RAILWAY AND LIGHT COMPANY *v.* BARNES.

1. Where the court properly instructed the jury as to the respective rights of the parties on a question in the case, the refusal of a request to give a charge containing a general proposition of law, though pertinent to the question, was not cause for a new trial.
2. "What particular means or measures of diligence would be appropriate for use under the circumstances should be left to the jury." Accordingly, it was not incumbent on the court to give, as requested, a charge that one who drives on and along a street-railway track laid in a public highway "should be careful to look and listen with ordinary care to avoid a collision."

3. An exception to a correct charge, because of failure to give, in the same connection, some other pertinent legal proposition, is not a good assignment of error.

4. It was not erroneous to instruct the jury that, in passing upon the credi- . bility of the witnesses, "their bias or impartiality, as the same may legitimately appear from the evidence," might be considered.

5. A motion for a mistrial was not the appropriate remedy when, upon a poll of the jury, the party against whom the verdict was rendered contended that it appeared from the answers of one of the jurors that it was not his verdict.

6. There was evidence to authorize the verdict, and the court did not err in refusing a new trial.

Argued October 22, — Decided December 12, 1904.

Action for damages.     Before Judge Hodges.     City court of Macon.     June 10, 1904.

The plaintiff, an old man, accompanied by an elderly woman, was driving in a buggy on the Houston road, outside of the city limits of Macon, between 9 and 10 o'clock on the night of March 23, 1903. There was no moon, but the stars were shining. The street-railroad track was laid on the right side of the road in the direction the plaintiff was driving, leaving a roadway 18 or 19 feet wide on the left but no space on the right of the track. The right wheels of the buggy were on the railroad track. A car approached on the track from around a curve, coming down grade, it being about 150 feet distant when the plaintiff saw its headlight. He thereupon turned his horse to the left in order to get the buggy away from the track, but before he succeeded in so doing the right rear wheel of the buggy was struck by the car with such force as to hurl its occupants to the ground and render them unconscious. There was a conflict of testimony as to checking of speed or ringing of the car bell. The defendant's testimony showed that the headlight on the car would shine for about 35 feet ahead of the car, which was stopped within three or four feet after striking the buggy. The jury found for the plaintiff $650, and there was testimony that supported this amount of damages. The defendant excepted to the overruling of its motion for a new trial, and to the refusal of the court to declare a mistrial. The grounds of these motions, so far as material here, are stated in the opinion.

*Dessau, Harris & Harris*, for plaintiff in error.
*Joseph H. Hall* and *Steed & Ryals*, contra.

FISH, P. J.   1. The defendant operated a street-railroad in the . city of Macon and some of the adjacent suburbs.   The plaintiff was driving in his buggy longitudinally on the defendant's track, in a public highway beyond the city limits, when one of the defendant's cars came in collision with the buggy, resulting in the alleged injuries and damages for which he sued.   On the trial the defendant's counsel requested the court to charge the jury that "the street-railway company, at the place where the alleged injury to the plaintiff is alleged to have occurred, had the superior right of way."   The court refused this request, but did instruct the jury that "the public have a right to use a public highway upon which a street-railway is operated, and the company has a right to use the highway upon which its track is laid, and to operate its cars thereon; but it is incumbent upon the public, in . . driving longitudinally on the track, to exercise ordinary care and diligence . . not to interfere with the use of the track by the railway company," and to exercise a like degree of care to avoid collisions.   In view of these instructions, we do not think the refusal of the request was erroneous.   A street-railway company has no superior right to the use of the public highway in which its cars are operated, over the rights of other users of the highway, except that, from the necessity of the case, the latter, at places other than crossings, must give the company's cars the right to pass when occasion requires.   In other respects, the rights of street-railway companies, in using public highways with their cars, are precisely like the rights of others who use the highways with other vehicles.   As the highway is laid out for passage, each passer has a right of passage, subject only to the condition that he does not unnecessarily interfere with such use by others as they are entitled to.   Butelli v. Railway Co., 59 N. J. L. 302; Nellis on Street Railroad Accident Law, § 15; Booth on Street Railway Law, § 303; 27 Am. & Eng. Enc. L. 57 et seq.   The instructions given to the jury clearly recognized, to the full extent, the superior right of way the defendant company had in the use of its track when the collision occurred, and the jury were much more likely to get from the court's instructions a correct understanding of the principle involved than they would have been from the general abstract proposition embodied in the request.   The broad assertion, in

the request, that the railway company had the superior right of way, might, if given without qualification, have impressed the jury with the idea that the railway company was, in some measure, exempt from the care required of it by law to avoid the collision with the plaintiff's buggy.

2. It was not erroneous to refuse to charge the jury that one who drives on and along a street-railway track, laid in a public highway, "should be careful to look and listen with ordinary care to avoid a collision." Whatever may be the rulings on the subject in other jurisdictions, it is well settled in this State that it is not incumbent upon the court to instruct the jury that it is the duty of one who attempts or intends to cross a railroad track to use his senses of hearing and seeing before stepping on the track. "The precise thing which any man should do before stepping upon a railroad track is that which any prudent man would do under similar circumstances. If prudent men would look and listen, so must every one else, or take the consequences so far as the consequences might have been avoided by that means. The court can not instruct the jury what a prudent man would do, for in legal contemplation the jury know it better than the court." *Richmond & Danville R. Co.* v. *Howard*, 79 *Ga.* 44, 53; *Richmond & Danville R. Co.* v. *Johnston*, 89 *Ga.* 560; *Metropolitan Street Railroad Co.* v. *Johnson*, 90 *Ga.* 500. "What particular means or measures of diligence would be appropriate under the circumstances should be left to the jury." *Ins. Co. of North America* v. *Leader*, 121 *Ga.* 260. If the court should charge, in a case of this character, that it was the duty of a party to do a specific thing, would it not be equivalent to saying that the omission to do that thing would be negligence? It is true that in the opinion rendered in *Savannah, Thunderbolt & Isle of Hope Railway Company* v. *Beasley*, 94 *Ga.* 142, 146, it was said that "people who intend to cross its [the street railroad's] track should be careful to look and listen in order to avoid a collision." The question in that case was, whether an electric street-railway company is under the duty to stop its cars before reaching the crossings of public highways, for the purpose of looking and listening by the motormen, or to enable them to look and listen, when there is no apparent reason for so doing; and the question was decided in the negative. What people who are about to

cross the railroad track should do was not a question in the case, and therefore what was said as to their duty in that respect appears to be obiter; but even if it were not, it would not be controlling in the light of the former express rulings on the subject.

3. The court instructed the jury: "If you believe from the evidence in this case that the plaintiff and defendant were both negligent, then the court charges you that if the plaintiff was more negligent than the defendant, the plaintiff could not recover in this case, and you should so find. If, on the other hand, you believe, from a consideration of the evidence in the case, that both parties were negligent, then I charge you that if the evidence shows the defendant company, its officers, agents, servants, and employees were more negligent than the plaintiff, I charge you that the plaintiff can recover, but the damages recovered by the plaintiff should be decreased by the jury in proportion to the amount of default attributed to the plaintiff from a consideration of the evidence in the case." The errors assigned upon this charge were: "(1) Because, under this charge, if the jury found that both the company and the plaintiff were negligent they could still find for the plaintiff. As a matter of law the plaintiff can not recover for injuries inflicted by the negligence of the agent of a railroad company in the operation of its trains or cars, if both the agent and the person injured are equally negligent at the time the injury is sustained. (2) This charge was error, because it omitted any statement as to the effect of finding that the injury was occasioned by casualty where neither party was at fault. The court nowhere in his charge instructed the jury upon either of these defenses, which the defendant was entitled to have considered by the jury, and which the court in its charge excluded, and to which the court in its charge should have called the attention of the jury. The court nowhere in its charge called the attention of the jury to either of the matters herein complained of and set up as error." The instructions given were correct. Under them certainly the jury were no more authorized to find for the plaintiff than for the defendant, in the event it appeared that both parties were equally negligent. The assignments of error were merely exceptions to a correct charge, because the court failed to give, in the same connection, some other pertinent legal propositions. Such assignments of error are not well taken. *Holston* v. *South-*

*ern Ry. Co.*, 116 *Ga.* 656 (3).    The statements that the court nowhere in its charge called the attention of the jury to the legal propositions which it failed to give in connection with the charge complained of were not assignments of error upon the charge, but were used merely as arguments why the instruction given should be held to be erroneous.

4. The court instructed the jury, that in determining where the preponderance of the evidence in the case was, and in passing upon the credibility of the witnesses, "their bias or impartiality, as the same may legitimately appear from the evidence," might be considered.    The exception to the charge was based upon the use of the word " bias," in this connection, the contention being that, without explanation, it was calculated to mislead the minds of the jury.    We are unable to see any force in this exception.    " Bias " is synonymous with " partiality," and any sensible juror would so understand; but even if there should have been any doubt as to this, a proper request should have been made for an explanation.

5. When the verdict was read, the jury, at the request of defendant's counsel, was polled.    Upon the call of the name of H. Moll, one of the jurors, the following colloquy occurred between the court and the juror: " Was that your verdict ?    A. Yes, sir. Was it freely and voluntarily made ?    A. Involuntarily.    Is it now your verdict ?    A. Yes, sir.    Was it freely and voluntarily made ?    A. I don't know.    Do you mean that it was not made freely and voluntarily ?    A. I agreed to it.    Was it made voluntarily or involuntarily ?    A. Voluntarily.    By the defendant's counsel: Was it freely made ?    No, sir.    By the court: What do you understand by the distinction between a verdict freely made and a voluntary verdict ?    A. I did not want to give that much. Is it not your verdict ?    A. I agreed to it.    Why did you agree to it ?    A. A compromise verdict.    Did you freely and voluntarily agree to compromise ?    A. Yes, sir."    " Thereupon defendant by its counsel moved the court to direct a mistrial in said case and not to receive the verdict of the jury, and upon the ground that it appeared that the juror, H. Moll, did not agree to said verdict and the same was not his verdict and was not freely and voluntarily made by the said H. Moll, but was involuntarily made and not freely made, and that the said juror, Moll, did not agree to the same as his verdict but as a compromise verdict."    The court " over-

ruled said motion and allowed said verdict to be received and
. . recorded." Exception was taken to this ruling of the court,
both in exceptions pendente lite and in the motion for a new trial.
"Counsel moved the court to direct a mistrial in said case and
not to receive said verdict." This, as it seems clear to our minds,
was merely a motion for a mistrial. The words, "and not to re-
ceive said verdict," while unnecessary in the motion for a mistrial
were, we think, evidently a part of such motion. Under the cir-
cumstances, a motion for a mistrial was not the appropriate
remedy, and the court did not err in not granting it. The proper
motion would have been, that the verdict be not received and the
jury be directed to retire to their room for further deliberation on
the case. While we can not make an authoritative ruling on the
question, we will say that, in the light of former rulings of this
court (*Black* v. *Thornton*, 31 *Ga.* 641; *Hill* v. *State*, 64 *Ga.*
451), we are inclined to the opinion that, even if the proper mo-
tion had been made, it would not have been erroneous to receive
the verdict.

6. There was evidence to authorize the verdict, and the court
did not err in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur.*