5960.   ATHENS RAILWAY & ELECTRIC CO. *v.* McKINNEY.

It being clear that the plaintiff, by the exercise of ordinary care, could have avoided the consequences arising from the negligence of the defendant, the verdict in favor of the plaintiff was unauthorized.

DECIDED SEPTEMBER 3, 1915.

Action for damages; from city court of Athens—Judge West. July 8, 1914.

*E. K. Lumpkin, E. K. Lumpkin Jr., John J. & Roy M. Strickland,* for plaintiff in error.

*George C. Thomas, Holden, Shackelford & Meador,* contra.

WADE, J.   The evidence discloses that the plaintiff was driving his automobile along the single track used by the defendant company in or near the middle of Milledge avenue, in Athens, Georgia. The machine was "astride" the rail on the right side of the plaintiff as he progressed along that street in a southerly direction; that is, the two wheels on the right side of the machine were outside of the rail, nearest the right side of the street, in the direction in which the plaintiff was going, and the two wheels on the left side of the machine and of the plaintiff were between the rails. The automobile was moving at a medium rate of speed and apparently was entirely under the control of the plaintiff, when, between cross-

ings, the plaintiff discovered a street-car approaching him on the same track and about 150 yards distant. He discovered the car just before he "got ready to turn across the street," in order to stop in front of a hospital located near that point, but observing a "dead" automobile in front of the hospital steps, and not wishing to stop below this car, as he intended to go on up the same street after visiting the hospital, he continued further up the track and then turned to the left and attempted to cross the tracks to that side of the street, instead of leaving the track by going to the right side and thus avoiding the approaching street-car. He testified, that when he saw the street-car 150 yards distant, he was looking at the "dead" automobile and not "paying much attention," until the street-car had approached within about 40 yards, and he then did everything possible in order to leave the track towards the *left* side of the street, but the street-car struck the rear wheel of his machine and practically destroyed it, dragging the car 50 or 60 feet before it was released; that the street-car, at the time it struck his automobile, was running at the rate of 25 or 30 miles per hour; the collision occurred at night, the light from the street-car was shining in his face, and he did not know it was going so fast until it got within about 40 yards; that he had already turned off the track before he discovered how fast the approaching street-car was moving, as it was impossible to tell the speed of such a car when approaching at night with a headlight. He further testified: "If I had known it was going as fast as it was, I would not have attempted to cross the track. At the time I crossed, if the car had been going at an ordinary rate of speed I would have had time to have crossed it. I did not know the speed the car was going at the time I attempted to cross the track. At the time it struck me, and before it struck me, it was running faster than it ordinarily runs at that time of night or along that particular track. I never saw it run that fast before. I thought at the time I crossed the track that it was running at an ordinary rate of speed. The reason I could not tell was because the light was in front of me; I could not tell until it got on me." He further testified that at the time of the collision he was in full view of the motorman driving the street-car that struck his automobile, as he was directly in front of the street-car. On cross-examination he said that he was driving in a southerly direction along Milledge

avenue between Meigs street and Hancock avenue, and was using the street-railway track, as the driving was smoother there; that the car he met was coming from the opposite direction, and he saw the car approaching before he started across the track, and stayed "across" or "astride" the track because he thought he had ample time to cross, judging by the speed at which he thought the street-car was moving, and the reason he "got caught" was because he was mistaken about the speed of the street-car. He further stated, on cross-examination, that if the "dead" automobile had not been in front of the hospital, he could have "gotten out of the way" of the street-car, if he had gone above it, and then would have been safe; and he admitted that if he had turned to the right side instead of the left when he attempted to leave the street-railway track, he could have reached the right side of the street without coming into collision with the street-car, and could then have crossed back to the left side of the street after the car had passed, and thus safely approached the hospital. He testified that he "had plenty of time to stay on the right side [of the street] and let the car pass," and that he "had plenty of room above this dead car;" and in response to the question, "If you had stayed on the right-hand side of the track, you had room enough between there and the curbing to have let the car pass you?" he said: "Yes, I had room over there to have stopped my car or to have gone on;" and to the further question, "Then you could have met the car, you going to the right and turning in around the rear of the car," he replied, "Yes, I could have gone on to Hancock avenue [the next street above], and turned around and got there."

It is perfectly clear, from the statement of the plaintiff himself, that the injury for which he sued would never have resulted had he not underestimated the speed at which the street-car was approaching, and attempted to cross to the left rather than to the right, supposing, from his past experience, and observation of the rate of speed at which this car generally moved, that he had ample time to take the longer and more dangerous course in removing himself from the street-railway track and from the hazardous position he occupied when he first discovered the approaching car. He admits that if he had turned to the right, no injury would have occurred and no loss would have resulted to him except the loss of time consequent upon his driving from the middle of the block up

to the next cross-street, and there turning in behind the street-car, and, after it had passed, coming on down the opposite side of the street to the hospital. It does not appear that there · was any emergency which required the plaintiff to turn to the left rather than to the right in the exercise of ordinary care, or any circumstances calculated to impair his judgment and ordinary discretion (*Pacetti* v. *Central Railway Co.,* 6 *Ga. App.* 97-98 (2) (64 S. E. 302)) ; but to the contrary, it is obvious, since no vehicle or other object appears to have obstructed the space between the street-car and the curb on the right side of the plaintiff, that the safest and most natural course to have pursued would have been for him to leave the track and go to the right of the approaching car; and he seems to have coolly exercised his judgment, notwithstanding his miscalculation. There may be cases in which, owing to the rapid rate at which a street-car is approaching in the middle of a narrow street, and owing to the further fact that the space between the car and the curb on the right of the street is occupied by other vehicles or persons, or perhaps is impassable on account of some defect in the street or some other obstacle temporarily there, not only the proper but the only course for the driver of an automobile to pursue, situated as was the plaintiff in this case, would be to turn to the left instead of the right; but in the present case it does not appear that there was any reason why the plaintiff, in order to save one or two minutes, should have abandoned the rule of the road and turned to the left rather than the right. It does not even appear that the plaintiff, in the course of his professional duties as a physician or in response to the promptings of humanity was seeking to reach the bedside of some sufferer at the earliest possible moment; and, barring some such reason as this, the members of this court (from long acquaintance with the classic city of Athens at a period in life when impressions made on the mind are usually deep and lasting) are convinced that time is not so precious in that serious and dignified city that a man need risk his life merely that he may save one or two minutes in going from one side of the street to the other.

Without discussing whether the ordinance of force in the city of Athens imposed upon the plaintiff the duty of turning to the right, it is sufficient to say that the State law itself (Civil Code of 1910, § 628) requires that travelers with vehicles (and certainly vehicles

would include automobiles), when meeting, shall each turn to the right. It is unnecessary to suggest that when a vehicle which is able to turn either to the right or the left meets a street-car, which under its franchise can travel only along the one fixed way marked out by its track, the vehicle meeting the street-car should, in the absence of any reason preventing, itself turn to the right side. In the case of *Thomas* v. *Central Railway Co.*, 121 *Ga.* 38 (48 S. E. 683), as well as in several cases cited therein, and in many other decisions of that court and of this court on the same subject, it is held that one who deliberately goes upon a railroad-track in front of an approaching train, thinking that he can safely cross before the train reaches him, and miscalculating its speed because he is in front of the train, can not recover for injuries resulting from being run down by the train, notwithstanding the company's servants may have been negligent in running at a high rate of speed at that particular point, or in failing to check the speed of the train at a public road which crossed the track between the place where the train was first seen by the plaintiff and the point at which the injury occurred. See, in this connection, *Central Railway Co.* v. *North*, 129 *Ga.* 106-111 (58 S. E. 647); *Harris* v. *Southern Railway Co.*, 129 *Ga.* 388-392 (58 S. E. 873); *Barber* v. *East & West Railroad Co.*, 111 *Ga.* 838 (36 S. E. 50); *Briscoe* v. *Southern Railway Co.*, 103 *Ga.* 224 (28 S. E. 638); *Cain* v. *Macon Consolidated Street Railroad Co.*, 97 *Ga.* 298 (22 S. E. 918); *McGrath* v. *City & Suburban Railway Co.*, 93 *Ga.* 312 (20 S. E. 317). In *Cain* v. *Macon Consolidated Street R. Co.*, supra, the plaintiff was crossing the street at right angles to the street-car track, the car had no conductor, and the motorman was receiving a fare and making change for a passenger; "his face was turned from the lookout in front, and his hands were off the handles by which he controlled the movement of the car." Cain was not looking and was not aware of the approach of the car until he was on the track, as the wind was blowing in the direction opposite to that in which the car was moving and the sound of its approach was borne away from him; when he looked up he saw the car about to strike him, threw up his arms towards it, and was struck and knocked about 15 feet. Clearly the defendant was negligent; nevertheless the Supreme Court held that the defendant was not, under this state of facts, liable, and said: "The car could have been seen some distance away, the street

being straight.  Had Cáin been paying attention, he could have stepped off the track and avoided being struck, after the gong began to ring."

In this case the plaintiff says he saw the street-car approaching when it was about 150 yards distant, but, owing to the fact that he was not "paying much attention," because he was looking at the ·dead automobile, he did not further observe its approach until it was within 40 yards, and he then discovered its rapid rate of ap-proach and made an effort to leave the track by going towards the *left* side of the street.  Elsewhere he admitted that he could have avoided the collision if he had turned to the right of the street in-stead of to the left.  "The plaintiff can never recover in an action for personal injuries, no matter what the negligence of the defend-ant may be, short of actual wantonness, when the proof shows he could by ordinary care, after the negligence of the defendant began, or was existing, have avoided the consequences to himself of that negligence.  *Americus, Preston & Lumpkin Railroad Co.* v. *Luckie,* 87 *Ga.* 6 (13 S. E. 105)."  *Rome Ry. & Light Co.* v. *Barna,* ante, 1 (84 S. E. 210).  The case last cited is very similar to the case at bar in its salient facts.  In that case the motorman was not in his place on the car and the conductor was acting as motorman, and in running the car was looking back and not forward, and failed to see the vehicle attempting to cross the track, and this fact was noted by the plaintiff, who attempted to cross the track. from the right side of the road (where an ordinance of the city of Rome required the vehicle to be) to the left side, in front of the rapidly approaching car and in the face of obvious danger, and this court held that it was clear that the plaintiff, by the exercise of ordinary care, could have avoided the injury resulting from the collision brought ·about, as alleged, by the negligence of the defendant.

As to diminution of damages because of contributory negligence on the part of the plaintiff, as was said in the case of *Americus, Preston & Lumpkin Railroad Co.* v. *Luckie,* supra, "the law of contributory negligence is applicable only where both parties are at fault, and when, also, the plaintiff could not by ordinary care have avoided the injury which defendant's negligence produced." Ordinarily it is true, that whether or not the plaintiff could have avoided the consequences of the negligence of the defendant by the exercise of ordinary care, or how far he himself contributed to the

injury, are questions for determination by the jury. *Miller* v. *Smythe*, 95 *Ga.* 288 (22 S. E. 532) ; *Oconee & Western Railroad Co.* v. *Ramsay*, 110 *Ga.* 266 (34 S. E. 408) ; *Pate* v. *City. of Atlanta*, 119 *Ga.* 671 (46 S. E. 827)`; *Dethrage* v. *City of Rome*, 125 *Ga.* 802 (54 S. E. 654) ; *Augusta Railway & Electric Co.* v. *Weekly*, 124 *Ga.* 384 (2) (52 S. E. 444) ; *Western & Atlantic Railroad Co.* v. *York*, 128 *Ga.* 687 (58 S. E. 183) ; *Trammell* v. *Columbus Railroad Co.*, 9 *Ga. App.* 98 (6) (70 S. E. 892). But where it is apparent, from the evidence of the plaintiff himself and from all of the surrounding circumstances in proof, that by the exercise of ordinary care the plaintiff could have avoided the consequences to himself caused· by the defendant's negligence, and there is nothing in the record to the contrary, the propriety of a finding by the jury for or against the plaintiff becomes a question of law for determination by the court. It was held in *Christian* v. *Macon Railway & Light Co.*, 120 *Ga.* 314 (47 S. E. 923) : "Under the evidence the jury might fairly infer that the defendant was negligent in running its cars. If the plaintiff and the defendant were both negligent, the former can recover unless his negligence was equal to or greater than the negligence of the defendant, or unless he could by the exercise of ordinary care have avoided the consequences of the defendant's negligence. The latter question is, under the plaintiff's evidence unexplained, a close one, and should have been submitted to the jury." In the case under consideration there is no such close question under the evidence, but, to the contrary, the entire evidence demonstrates clearly that by the exercise of ordinary care the plaintiff could have avoided the consequences of the defendant's negligence.

It is true some difference may exist in the case of one who is injured on a railroad-track at a public crossing, and one who is injured on a public highway by a street-railway car, and who has as full and complete a right to be on the highway as the car has, subject only to the limitation that he and the car may not seek to occupy the same space at the same time. And yet, in principle, one driving down a public highway on the track of an electric-railway company, which enjoys the right by franchise to run its cars along the street, is subject to the rule laid down in the *Thomas* case, supra. He must not attempt to cross the track, or remain thereon

unnecessarily, when the approach of the car is observed or when the car is in close proximity and is still moving, merely because he concludes that the speed at which it is moving will allow him to attempt a crossing in front of it or to defer his removal from the track. Such conduct amounts to such a want of ordinary care as will defeat his right of recovery, notwithstanding negligence on the part of the defendant.

The plaintiff in this case distinctly states that he would not have attempted to cross to the left side of the street rather than to the right, if he had not underestimated the speed of the approaching electric car, which was running much faster than he had ever before seen it move along that street, and in fact he says that, though he saw the car approaching at a distance of 150 yards, he gave it no special attention, but directed his attention instead to the "dead" automobile standing on the left side of the street, near the point where he wished to stop his machine, and did not again observe the approaching car until it was only some 40 yards distant. It is apparent, from the testimony for the plaintiff, that the defendant was negligent in running its car at the high rate of speed shown by the testimony and in making no effort to check or diminish that speed after the motorman in charge of the car must have discovered the presence of the plaintiff on the track immediately in front and plainly in view. Nevertheless, if the injuries resulting from the negligence of the man in charge of the electric car could have been avoided by the exercise of ordinary care on the part of the plaintiff, no recovery can be had by him, and it appears beyond question to us that by the exercise of ordinary care on his part, the negligence of the defendant could not have resulted injuriously. Civil Code, § 4426.

It is useless to discuss the various special assignments of error embraced in the amendment to the motion for a new trial, under the view we take of this case as expressed in the headnote and in this opinion, since the facts as shown by the evidence for the plaintiff establish no right of recovery, and the verdict was contrary to law. The case, as we see it, turns upon the simple proposition embodied in the headnote, and therefore no occasion exists for lengthy discussion of the facts or citation of authority, the sole question under the uncontradicted evidence being: Could the

plaintiff, by the exercise of ordinary care, have avoided the consequences of the negligence of the defendant? The court therefore erred in overruling the motion for a new trial.

*Judgment reversed.*