7726.  UNITY COTTON MILLS *v.* HASTY & STRICKLAND.

While this court will not disturb the verdict of a jury where there is evidence to support its finding, the record in this case fails to disclose any testimony on which the verdict can be based.

DECIDED MARCH 20, 1917.

Levy and claim; from city court of LaGrange—Judge Harwell. June 15, 1916.

*Hatton Lovejoy, Meadors & Wyatt,* for plaintiff in error.

*M. U. Mooty, A. J. Andrews,* contra.

JENKINS, J.  A mortgage fi. fa. in favor of Hasty & Strickland against J. W. Pruett was levied on two bales of cotton, and Unity Cotton Mills interposed a claim.  The verdict found the property subject, and a motion for a new trial was overruled.  The issue of fact was whether the cotton belonged to the defendant and was grown on the "Floyd place," described in the mortgage, or had belonged to his father, J. R. Pruett, from whom claimant had purchased.  It was agreed that the claimant bought the cotton in good faith on October 23, 1914.  The levy on the two bales was made on November 5, 1914.  J. W. Pruett, the defendant in fi. fa., and his father, J. R. Pruett, testified positively and unequivocally that the cotton was raised by and belonged to the latter; that J. W. Pruett did not raise the cotton; that he had no title or interest in it, and that his sole connection with it was to bring the cotton to town for the purpose of sale, at the request of his father; that some of the proceeds therefrom were paid on two accounts owing by his father, and the balance was turned over to him by the son.  Receipts of the parties to whom these two amounts were paid, of the same date as the date of the sale, were in evidence.  The only evidence for the plaintiffs in fi. fa. was that of G. L. Thompson and of Maynard Strickland, one of the plaintiffs.  The testimony of G. L. Thompson in full is as follows: "I know J. W. Pruett.  I know the Floyd farm which he worked during the year 1914.  His land adjoins mine.  I know J. R. Pruett, father of J. W. Pruett.  He runs a mill and cotton gin and owns land adjoining J. W. Pruett.  The lands of J. W. Pruett and J. R. Pruett are separated by the public road.  I remember seeing two of J. R. Pruett's boys together with J. W. Pruett on a wagon loaded with cotton, carrying it to the gin.  They were on the wagon together.  I saw this cotton gathered in the field on the

Floyd place and loaded on the wagon. Later I was at the gin owned by J. R. Pruett and saw the two bales of cotton. This occasion when I saw the cotton I testified about as loaded on the wagon was not more than ten days before the levy which I heard about, and my best judgment is that it was six or eight days before. On the former trial of this case I did not testify as is set forth in the brief of evidence as follows: 'I do not know whose cotton it was. I never saw that particular cotton before that I know of. I did not see it gathered. I do not know that the cotton on the wagon was J. W. Pruett's cotton. I never saw the wagon loaded. I do not know on whose land the cotton was raised which I saw on the wagon. I do not know where that two bales of cotton at the gin was raised. It might have been belonged to J. R. Pruett. I do not know that the cotton levied on was the same cotton which I saw on the wagon at the gin owned by J. R. Pruett. I do not know where the cotton was raised which I saw at the gin house.'"

The testimony of Maynard Strickland in full is as follows: "I went to the Pruett home a few days before the levy and talked with J. W. Pruett. He told me that he had about two bales of cotton. I saw the pile of cotton he was talking about on the porch of his house. It looked to be nearly two bales of cotton. Mr. J. W. Pruett said that he would bring me the two bales within a few days. Just as soon as he finished out the two bales. There was about 1,500 pounds of seed cotton on the porch at the time we foreclosed our mortgage. It was levied on. I pointed out the two bales levied on in the Security Warehouse. (It was admitted by attorneys for claimant that the cotton was placed in the warehouse in the name of J. W. Pruett.) I do not know that these two bales of cotton were raised on the J. W. Pruett's lands. I do not know that it was raised on the lands covered in our crop mortgage. The seed cotton levied on was not the same cotton I saw at the house on the porch. J. W. Pruett farmed on lands known as the Thompson land and also known as the Floyd land. I do not know whether anyone else worked a part of the Floyd place. The cotton levied on was ginned at J. R. Pruett's gin, because his gin makes a peculiar shaped bale."

1. We think the description given by the recorded crop mortgage, though meager, was sufficient to put a purchaser on notice

(*Thomas Furniture Co.* v. *T. & C. Furniture Co.,* 120 *Ga.* 879, 48 S. E. 333); and therefore our decision in this case is based entirely upon the testimony as shown by the record.

2.   No principle of law is founded upon better reason or has been more strictly adhered to by this court than that the jury are the proper judges of the weight and sufficiency of testimony and of the credibility of witnesses, and this court will not disturb the verdict of a jury where there is evidence to support its findings. *Davis* v. *Kirkland,* 1 *Ga. App.* 5 (58 S. E. 209); *Strickland* v. *Crawley,* 1 *Ga. App.* 139 (58 S. E. 215); *Charles* v. *Brooker,* 1 *Ga. App.* 219 (58 S. E. 218); *Daughtry* v. *S. & S. Ry. Co.,* 1 *Ga. App.* 393 (58 S. E. 230).   We agree with the following language in the case of *Western & Atlantic R. Co.* v. *Hunt,* 116 *Ga.* 448 (42 S. E. 785), in which our Supreme Court says:   "We fully recognize that questions of fact are for the jury, and that their discretion as to the facts is a wide one.   We believe, also, that they are better judges of the facts than are courts, and we have great respect for their verdicts.   They are often affirmed in cases where it seems clear to the members of the appellate court that if they had been in the jury-box they would have rendered a different verdict. We recognize, also, that the discretion to set aside a verdict on the ground that it is strongly and decidedly against the weight of the evidence is reposed by law in the presiding judge, whose opportunities for determining this question are necessarily very much better than those of this court."   In the instant case, however, we have been unable to find in the record any evidence which we deem could be properly held to support the finding of the jury.   It will be observed that the witness Thompson does not state that the cotton levied on was the cotton which he saw gathered on the Floyd place and which he saw carried from there to the gin.   On the contrary, he says that the occasion on which he saw this cotton was not more than ten days before the levy, and that in his best judgment it was six or eight days prior thereto, whereas the evidence shows that the levy was made on November 5, and the mill had actually bought the cotton on October 23, a period of thirteen days prior thereto.   Therefore, according to Thompson's evidence, the cotton levied on could not possibly have been the cotton testified to by him, which he had seen gathered on the Floyd place. The only other witness for the plaintiff in fi. fa. was Maynard

Strickland, who stated that a few days before the levy he had gone to the house of the defendant in fi. fa., J. W. Pruett, and, in a conversation with him, was told that he then had about two bales of cotton, and that he saw a pile of cotton in the seed, containing about 1,500 pounds, on the porch of his house. He testified that he did not know that the two bales levied on were raised on the land known as the Floyd place, covered by the crop mortgage, and that he did not know where it was raised. Even if it can be held that the evidence in the record inferentially indicates that the cotton levied upon was the seed-cotton seen by this witness on the porch of the defendant in fi. fa., still this witness testified that the defendant in fi. fa. farmed on lands not covered by the crop mortgage, known as the Thompson place, and his evidence was entirely silent as to which place the seed cotton he saw had been gathered from. As the evidence of these two witnesses constitutes all of the testimony on behalf of the plaintiff in fi. fa., we feel necessarily constrained to hold that the verdict is without evidence to support it; and that the judgment of the court below, refusing to grant a new trial, was error.

*Judgment reversed. Broyles, P. J., and Bloodworth, J., concur.*