9829. HARRIS *v.* GEORGIA RAILWAY & POWER COMPANY.

BROYLES, P. J. Under the facts of the case the court erred in awarding a nonsuit.

*Judgment reversed. Bloodworth, J., concurs. Stephens, J., not presiding.*
DECIDED NOVEMBER 23, 1918.

Action for damages; from Fulton superior court—Judge Pendleton, April 4, 1918.

The plaintiff, when driving an oil-tank wagon southwardly along the west side of Lee street in the city of Atlanta, turned his wagon to the left and drove on the street-car track in order to pass an ice-wagon which was standing between the track and the sidewalk; and when he had passed the ice-wagon and was turning his wagon to the right, leaving the street car track, a street-car approaching from behind, and which he had seen before he drove on the track, struck the left rear-wheel of his wagon with such force that he was thrown from the wagon and injured. He sued the street-railway company for damages, alleging that it was negligent as follows: (1) that the street-car was being run at a reckless and dangerous rate of speed, to wit, at the rate of 30 miles an hour or more; (2) that no bell or gong was rung to warn him of his danger; (3) that the defendant's servants on the car, after seeing his danger, made no effort to stop the car, so as to avoid injury to him, and their failure to do so was wilful, wanton, and malicious; and (4) that the car was running at a speed of more than 15 miles an hour, in violation of a municipal ordinance. On the trial the court, on motion of the defendant's counsel, at the conclusion of the evidence introduced by the plaintiff, granted a nonsuit.

The plaintiff testified: "When I got about half way of the block I seen an ice-wagon standing on my route that looked like it was about two feet or two and a half feet from the curb, which made it necessary for me to drive around with two wheels on the track to pass this wagon, and I looked out to see if a car was coming. It was about half a block or over to my rear. I thought I

had sufficient time to drive around that wagon; it is a good long block. I got started around that wagon, and just as soon as I got at the head of the mule I pulled around the wagon and commenced to pull off. I commenced to get off on my right, and about that time I heard a noise behind me, and I took my whip and pulled up my lines to try to hit my mule to hurry, and the car hit me about that time, hit the rear hind wheel on the left-hand side and threw me out. . . When I drove on the car track I was just about as close as I could get to the ice-wagon to get around the wagon without hitting it, before I drove upon the track. That is when I looked back to see if the car was coming. . . . When I looked back it looked to me like the car was at least half a block or more back. . . I was about half way that block, or a little over. . . . I reckon it was 60 or 70 feet . . before I got to the half-way stop. . . When I looked back that car was just crossing Oglethorpe [avenue], just fixing to cross Oglethorpe." As to the distance to Oglethorpe avenue and the length of the block, the estimates given by the plaintiff when he first testified were somewhat lower than the measurements given by him in subsequent testimony. He first testified that the distance to Oglethorpe avenue was about 300 feet, and the block was at least 400 feet long. He further testified: "This was daylight, early in the morning, but the sun was up. The street was straight. The car was coming towards me, but I could not tell how fast it was coming. . . I know it was so far behind that I thought I had the right of way. I couldn't swear that it was 200 feet back or 100 feet or 20 feet, because I never measured it. . . I know it was running mighty fast when it hit me, or it wouldn't have hit me so hard. . . After looking back and seeing the car about 200 feet (exactly how far I couldn't tell) and coming fast (but how fast I couldn't tell), and knowing that I had the right of way, I turned to go around the ice-wagon, and, before I got around, the car hit me. As to its coming either faster than I thought it was, or that it was closer to me than I thought it was—I don't know; I guess it was; it was coming faster than I thought it was, I reckon. I guess that is right, that it was either coming faster than I thought it was, or that it was closer than I thought it was. I don't know whether that is right or not. . . . I am satisfied that car was not closer than I thought it was; it might have been coming faster than I

thought it was. I know it was coming faster than I thought it was, if you will have it that way. Lee street, between this half-way stop and Oglethorpe avenue, has a little slant. . . The car was coming down a slight slant towards me. About the corner of Oglethorpe, I think, is where the highest point is in there; it was a very little slant, I suppose about two feet difference from the corner down there. . . As to how many feet I had to drive to get around that wagon, I reckon the team would be about 18 feet somewhere, from the back of the wagon to the end of the mule. . . I had to go 28 or 30 feet while the car was going over 200 feet, to strike my wagon. My mule was walking when I got on the track." Later, after having made measurements, the witness testified, he found that the distance between Oglethorpe avenue and Beecher street (the next cross-street south) was 849-1/2 feet, and from the half-way stop to Beecher street was 389 feet; also: "From Oglethorpe to that rise between Oglethorpe and where I was struck is 185 feet—to the rise; from the crest of the rise to the water plug was 219 feet; that is where the ice-wagon was." The witness stated that he heard no gong at or before the time the car struck his wagon; that the noise as to which he had testified was a rumbling noise, like that of a car. There was evidence as to the extent of his injuries, and as to his earnings, etc. The driver of the ice-wagon testified that he saw the plaintiff start around the ice-wagon and saw the car coming, and "knew that there was going to be a collision, the rate the car was running; . . there was no way not to have a collision. . . . Mr. Harris [the plaintiff] had done gone around then." It was testified that the street-car was "coming down that grade . . about 30 miles an hour, something like that." A city ordinance limiting the speed of street-railroad cars at that place to 15 miles an hour was introduced in evidence.

In the brief of counsel for the plaintiff it is stated that the trial judge, in granting the nonsuit, said that the case was controlled by the decision in *Athens Ry. & Electric Co.* v. *McKinney*, 16 *Ga. App.* 741.

*Arminius Wright*, for plaintiff, cited: *Savannah Electric Co.* v. *Ellarbee*, 6 *Ga. App.* 137(2); *Howard* v. *Savannah Electric Co.*, 140 *Ga.* 484, and citations; *Columbus Street R. Co.* v. *Berry*, 142 *Ga.* 670; *Macon Ry. & Light Co.* v. *Barnes*, 121 *Ga.* 443-5; *Ga. Ry. & El. Co.* v. *Joiner*, 120 *Ga.* 905; *Perry* v. *Macon Consol. Street R. Co.*, 101 *Ga.* 400, 407, 411; *Freeman* v. *N. C. & St. L.*

*Ry.,* 120 *Ga.* 469(2) ; *Western & Atlantic R. Co.* v. *Ferguson,* 113 *Ga.* 708; *Brunswick &c. R. Co.* v. *Gibson,* 97 *Ga.* 497; *A. K. & N. R. Co.* v. *Gardner,* 122 *Ga.* 82(4) ; *Williams* v. *Southern Ry Co.,* 126 *Ga.* 711; *Cen. Ry. Co.* v. *Pelfry,* 11 *Ga. App.* 119(3) ; *Southern Ry. Co.* v. *Wiley,* 9 *Ga. App.* 251; *C. & W. C. Ry. Co.* v. *Johnson,* 1 *Ga. App.* 441; 1 Thomp. Neg. (White's Supp.) §§ 238, 239, 227; Civil Code, § 5746; *Kelly* v. *Strouse,* 116 *Ga.* 872, 881; *Pendleton* v. *Atlanta Lumber Co.,* 3 *Ga. App.* 714; *Athens Ry. & Elec. Co.* v. *McKinney,* 16 *Ga. App.* 741 (distinguished).

. *Colquitt & Conyers,* for defendant, cited: *Atlanta Ry. & Power Co.* v. *Owens,* 119 *Ga.* 835; *W. & A. R. Co.* v. *Hunt,* 116 *Ga.* 450; *Athens Ry. & Elec. Co.* v. *McKinney,* supra; *Southern Ry. Co.* v. *Davis,* 132 *Ga.* 818, 819; *Hearn* v. *Cen. Ry. Co.,* 22 *Ga. App.* 1.