## CIRCUIT COURT OF HENRICO COUNTY

Life Insurance Co. et al.

v.

Daniel International Corp. et al.

### Case No. 79-L-346

By JUDGE E. BALLARD BAKER

June 23, 1980

This letter addresses the demurrer filed by Concrete Structures, Inc. and Concrete Erectors, Inc. to the Third-Party Motion for Judgment by Daniel International Corporation.

Briefly, Daniel constructed a parking deck for Life Insurance and, together with the architect, Hardwicke Associates, has been sued by Life Insurance Co. in a three count Motion for Judgment alleging major defects in the parking deck. Daniel International seeks to bring Concrete Structures and Concrete Erectors in under Rule 3:10, alleging a contract with each of the two with respect to construction of the parking deck under which it is entitled to indemnification or contribution.

The demurrer is based upon the proposition that Rule 3:10 does not allow a third-party procedure based on indemnification or contribution "because defendant Daniel has alleged no payment to the plaintiff. No cause of action exists in favor of Daniel against any third party."

Rule 3:10 provides, in part, as follows:

> At any time after the commencement of the action a defending party, as a third-party plaintiff, may file and serve a third-party motion for judgment upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him . . .

In *Valley Landscaping Co.* v. *Rolland*, 218 Va. 257 (1977), the Supreme Court recognized Rule 3:10 as a counterpart to Rule 14 of the Federal Rules of Civil Procedure, and quoted a text book reference which, among other things relevant to the issue in *Valley*, indicates that Federal Rule 14 does allow third-party actions where the claim is based on indemnity or contribution. The holding in *Valley* was that the contractor, when sued by the owner, had no right to bring a third- party claim against the architect under the circumstances alleged. There was no showing that the architect "was potentially liable for all or part of . . ." the owner's claim against the contractor.

There is such an allegation here, based on the contracts. But it is contended that no right to maintain an action for contribution or indemnity accrues until, at least, some liability has been fixed on the party seeking contribution or indemnity. And that seems to be the rule in Virginia. *Bartlett* v. *Recapping, Inc.*, 207 Va. 789 (1967); *Allied Productions* v. *Duesterdick*, 217 Va. 763 (1977).

In *Nationwide Ins.* v. *Minnifield*, 213 Va. 797 (1973), the Supreme Court noted the distinction between "the equitable, *inchoate* right to contribution that arises at the time of jointly negligent acts and the maturation of the right to *recover* contribution that arises only after payment of an unequally large share of the common obligation." (213 Va. 799). The Court held that, for purposes of set-off, the inchoate right to contribution arose at the time of the accident.

It would seem that the same distinction is valid with respect to indemnification, with the maturation of the right to recover indemnity arising where there has been actual loss or damage. *Nationwide* v. *Minnefield*, *supra*, at 801.

Counsel for Daniel urged that Rule 3:10 is merely a procedural thing which undertakes to accelerate the right to bring an action; that the Federal counterpart of Rule 3:10 permits a third-party action where contribution or indemnity is involved; and that failure to permit this would frustrate the purpose of Rule 3:10.

I agree with the position of Daniel. I do not agree with the demurrants that Rule 3:10 is in conflict with section 8.01-34, that section merely providing that contribution may be enforced when the wrong involves negligence but not moral turpitude. The procedural aspects are not prescribed in the statute.

Section 8.01-3 relates to the rule-making power of the Supreme Court. It may:

> prepare a system of rules of practice and a system of pleading and the forms of process to be used in all such courts. This section shall be liberally construed so as to eliminate unnecessary delays and expenses.

In *City of Richmond* v. *Branch*, 205 Va. 424, 430 (1964), the Supreme Court held that the City could not file a cross-claim under Rule 3:9 where it claimed indemnification because it had not suffered loss at the time. The Court pointed out that Rule 3:9 requires that there be a "cause of action" that the defendant "has" at the time of filing and it must grow out of the matter pleaded in the motion for judgment. Rule 3:10 does not use that same terminology, requiring instead that the person "is or may be liable to him for all or part of the plaintiff's claim against him."

Clearly, under these pleadings Concrete Structures and Concrete Erectors "may be liable . . ." to Daniel for part of Life Insurance's claim against Daniel, even though Daniel does not have a "cause of action" it could bring independently.

Despite the distinguished authority cited to the contrary in the memos, in my view Rule 3:10 must be liberally construed, and does indeed allow a third party plaintiff to bring in a third-party defendant who "is or may be liable . . ." to him in a matter related to the original motion for judgment, even though the basis of such liability

is indemnity or contribution. I find no statute violated by such interpretation.

The demurrers will be overruled.

## June 8, 1983

Subsequent to the trial and verdict of November 24, 1982, the Court has received a number of motions and memoranda and heard oral presentations on May 16, 1983.

Without intending to slight or overlook any motions made, this letter will mention only the motion for mistrial relative to the verdict, the motions by Daniel against Concrete Structures and Concrete Erectors, and the Williams Crane and Rigging motion.

For reasons stated later, the motion by Life of Virginia for a mistrial is granted.

Daniel's motion to pass on to Structures and Erectors all of the verdict against Daniel is mooted by the mistrial. Further, without the transcript, this Court would prefer not making any determination of the merits of the claim.

Daniel's motion against Structures and Erectors for costs is not disposed of here. As the case must go on, this claim is premature.

Williams Crane and Rigging's motion, based on Section 8.01-250, could be ruled on, but as Structures and Erectors take the position in their February 18, 1983 memo that if § 8.01-250 bars a claim against Williams it also bars Daniel's claims against them, and as it appears Daniel has made no comment on this, this Court will make no further comment at this time.

The primary concern of this letter is *the verdict* and motion by the Life Insurance Company for a mistrial.

The question is whether the verdict handed to the Court by the jury foreman and read in open court should be received as the verdict of the jury. This arises because of questions put to Juror Hubbard after a poll by the Court. In this poll each juror was asked "Are these your verdicts?", and all responded "They are" -- with Hubbard's response following a noticeable pause.

As the Court began to dismiss the jury, Philip Morris, attorney for the Life Insurance Company, requested and was permitted to ask additional questions of Hubbard.

*(a) Was inquiry of Hubbard appropriate?*

At 76 Am. Jur. 2d, *Trial*, sect. 1122, the following statement is found:

> Examining the jury by the poll is the most generally recognized means of ascertaining whether they are unanimous in their decision. In no other way can the rights of the parties to the concurrence of the jurors be so effectually secured as to have each juror answer the question, "Is this your verdict?" in the presence of a court and counsel. By this means it can be ascertained for a certainty that no juror has been coerced or induced to agree to a verdict to which he does not fully assent. The poll of each member of the jury on the question whether the verdict rendered is the verdict of each juror represents the extent to which the court may go in inquiring of the jurors as to the method of reaching their verdict.

In *Miller* v. *Blue Ridge*, 15 S.E.2d 400 (W. Va. 1941), the West Virginia Supreme Court held that the trial court properly refused to allow inquiry, after a poll in which all jurors agreed, as to whether the verdict was a quotient verdict. However, it is not hard to find cases in which there has been further questioning of a juror. *Soweco* v. *Shell*, 617 F.2d 1178 at 1187 (5th Cir 1980); *Macon* v. *Barnes*, 49 S.E. 282 (Ga. 1904). And where there is something odd in the verdict, as the damages in a condemnation being returned as zero, *State* v. *Normandy*, 413 N.E.2d 268 (Ind. 1980), further questioning has been allowed.

The text in 71 A.L.R.2d at 662, indicates that where a juror's response is equivocal or the meaning thereof is doubtful, further interrogation for the purpose of ascertaining definitely whether he does or does not assent to the verdict has been held permissible. *See also* 76 Am. Jur. 2d, *Trial*, sect. 1127 at 103.

This jury, at 10:10 a.m. on November 24, 1982, had inquired what happened if a unanimous decision could not be reached. At 11:00 a.m. the foreman wrote a note, that "We the jury cannot reach a unanimous decision.

We have been "Hung" since mid-afternoon the 23rd of November." At 12:26 p.m. the verdict came in followed by Hubbard's pause in the poll.

Morris's request to ask additional questions of Hubbard was a normal response. While the Court could have denied the request, no persuasive authority has been cited that it was error to permit him to proceed.

A verdict is a unanimous decision of a jury and is a substantial right of which neither party can be deprived. *Holstein* v. *Etna Oil*, 243 S.E.2d 397 (N.C. 1978). If there is some indication that a juror has concern about the jury verdict, as there was here, then the ends of justice are not served by clamping a lid on further inquiry. Had the request of Morris been denied and the jury discharged, subsequent affidavits from Hubbard could not have been considered. But the jury was there in open Court, Hubbard had an apparent concern, it was known that the jury had been hung for several hours ninety minutes before. Under these circumstances, this Court believes inquiry of Hubbard was appropriate.

*Phillips* v. *Campbell*, 200 Va. 136, 140-141 (1958), states the general rule:

> It has long been settled in Virginia that the affidavits or the testimony of jurors to impeach their own verdicts are to be received with great caution and only in exceptional cases, and in order to prevent a failure of justice . . . *The reason for the rule is that otherwise there would be held out to unsuccessful litigants and their friends the strongest temptation to tamper with jurors after their decision and might be productive of great evil* . . . (Underlining added).

Here, the reason for the rule does not apply. The jury had not been discharged; it remained in the courtroom for the first part of the colloquy. And if all jurors did not in fact assent, there is a failure of justice.

In the 1792 case of *Cochran* v. *Street*, 1 Va. (1 Wash.) 79 (1792), a verdict in a slander case was set aside and a new trial ordered in an equity proceeding brought some time after the verdict, where four jurors testified they

did not dissent from the verdict because of a misapprehension of the law. This rather unusual case is cited merely to show that inquiry into jury verdicts is not a new-fangled idea in Virginia.

*(b) Was inquiry of Hubbard improperly conducted?*

> In the absence of any statutory provision as to the method of conducting a poll of the jury, the matter is within the discretion of the trial judge. (76 Am. Jr. 2d, *Trial*, sect. 1122).

Hubbard was asked by Morris "Is this your verdict?" -- a proper question -- and Hubbard's response led to other areas raised by Hubbard. Is there any further alternative? What does a hung jury mean? Hubbard's responses led to other questions, and then the matter of appeal was involved. There were questions relating to specific issues the jury had before it.

To the extent that questions to Hubbard touched on whether he assented to the verdict or not, they were proper. While a juror should not be questioned as to his motive or the reasoning which influenced his decision, *Washington Luna Park* v. *Goodrich*, 110 Va. 692, 697-8 (1910), questions directed to the issue of assent should not be improper even if they touch on notice. If a juror does not assent to the verdict, there is no verdict.

It can be argued that the Court, rather than counsel, should have conducted the questioning. The poll itself must be conducted by the Court, but if the circumstances justify further inquiry, as they did here, there seems no good reason why counsel cannot ask proper and relevant questions.

A review of the transcript leads to a conclusion that some questions put to Hubbard went beyond what was proper and relevant. However, these can be put aside, and consideration given to those which deal with the crucial issue, did Hubbard assent to the verdict?

*(c) What did Hubbard say -- and its effect?*

Juror Hubbard was questioned in open court in the presence of all jurors and counsel, and then the jurors

were asked to step outside, returning shortly for further inquiry.

During the first period, Hubbard made the following statements:

> In light of those instructions, I felt that it was better to compromise. In light of what has been asked of me here, and what you have said, I feel that it is better to go with the hung jury, which is what we had at one point. And, in answer to your question then, that would not be my verdict, no. [Tr. p. 10].
>
> I don't believe that this jury, I being a part of this jury, I don't believe we can compromise any further than this and come up with a unanimous decision. [Tr. p. 10-11].
>
> But we were under that assumption that you could appeal it, anyone that was not satisfied. If that is not the case, you are unable to do that, then I would prefer to go back to the hung jury, yes. [Tr. p. 11].
>
> That, that is not my verdict, no. That is what we agreed to, to get a unanimous decision rather than a hung jury. I don't think I'm the only one that would feel that way, that it is not actually their decision. But that is what it took to get a unanimous decision. [Tr. p. 12].
>
> The hung jury was hung on how much total damages Life Insurance of Virginia was entitled to recover. [Tr. p. 13].

When the jury was then again polled, but solely on the $58,000.00 verdict for Daniel against Concrete Structures:

> With that in mind, then I would say that is not my verdict, no. [Tr. p. 20].

(While Hubbard, at page 9, line 23, comments that the Court "told us to go back in and compromise and come up with something, unless you just completely cannot", it is not felt that was a correct statement. A transcript

of the Court comments to which Hubbard refers is not available, but the Court has no recollection of telling the jurors to compromise.)

The jurors were then asked to step outside, and the Court conferred with counsel.

At this point, it is clear to this Court that Hubbard has stated that he does not agree with the jury verdict against Daniel and Hardwicke, but that he felt obliged to compromise for an agreement.

In *Apperson-Lee Motor Co.* v. *Ring*, 150 Va. 283 (1928), the Supreme Court approved the following statement:

> We are referred to a number of cases which hold that juries are not authorized to compromise the vital questions at issue between litigants . . .
>
> The law contemplates that they shall, by their discussions, harmonize their views, if possible, but not that they shall compromise, divide, or yield for the mere purpose of an agreement. 150 Va. 286-7.

*Counts* v. *Commonwealth*, 137 Va. 744, 749 (1923), says the following:

> The verdict should have the assent of all of the jurors because it is considered by them to be based on the law and the evidence; not merely because a majority of the jurors so consider it. This is the standard, and the sole standard, by which the parties affected have the right to have verdicts found . . .

After a discussion with counsel while the jurors were out, the jury was called back to receive a statement from the Court and a question, this over the objection of Morris. (Tr. p. 34). The statement and question were:

> Let me ask a question of all the jurors with a statement. A jury verdict is one on which all jurors agree. It is not necessarily a verdict which an individual juror would have reached if he alone had to make the decision; it is

one to which all members must agree. Now, with respect to the verdicts which have been handed in here, in light of that question, Mr. Horn, is that your verdict? (Tr. p. 34).

All jurors, including Hubbard, responded "It is." The Court then asked,

Has anything happened since the jurors went out and while in the corridor the last few minutes which has changed anybody's thinking on the case? (Tr. p. 35).

All jurors replied in the negative. No juror had anything else to say.

This Court cannot read the several pages of this transcript of the verdict discussion without arriving at the conclusion that the assent Hubbard gave to the verdict in the jury room and on the poll was the result of a compromise of his view of the case, and perhaps a misunderstanding of what an appeal was. Several times he says this is not his verdict. His last words on the subject, "it is," come after a further statement and question from the Court, over objection, and after the jurors had been outside the courtroom a few minutes. And this is followed by a negative response to an inquiry whether anything had happened while in the corridor which changed anyone's thinking on the case. Before going into the corridor, Hubbard had indicated it was not his verdict.

The meaning to be given to Hubbard's responses when the jury was in the last time can vary depending on who does the interpreting. But the overriding sense of the entire exchange is that Hubbard indicated assent in the jury room and on the poll, but as a compromise of his views on the case. While he answers both ways on the specific question of whether the verdict is his, he never backs away from his statement that any assent from him was a compromise to avoid a hung jury.

As noted in *Apperson-Lee* v. *Ring*, *supra*, a juror is not authorized to compromise for the mere purpose of reaching an agreement. The conclusion this Court reaches is that is what Hubbard did. Does that destroy the verdict?

This Court has read only one case in which a verdict was challenged because a juror, before discharge, said that he agreed to the verdict as a compromise. *Macon v. Barnes*, 49 S.E. 282 (Ga. 1904), held that not to be grounds for a mistrial.

However, *Eulo v. Duval Aerodynamics*, 47 F.R.D. 35 (E.D. Pa. 1969), at 49 points out that:

> Courts often have discarded verdicts and ordered new trials in civil actions on the basis that the jury improperly reached a verdict by compromising its conscientious convictions.

The record here supports the holding that any assent Hubbard gave was a compromise of his views. *Apperson-Lee* says a juror should not compromise. While there may be a thin and wavy line between "harmonize" and "compromise", this case is compromise.

The conclusion this Court reaches is that Hubbard assented in the jury room as a compromise; then stated his lack of assent in the courtroom. He has not given the assent to a jury verdict that a litigant deserves. It is true that had Hubbard not paused in the poll, the question would not have surfaced. However, he did, and this Court allowed inquiry into why.

Upon consideration of what came out of the discussions, the conclusion is that the jury did not return a verdict to which all jurors agreed, without compromise. While it can be argued that a misunderstanding of the appeal process also was involved -- and that would be no basis for a mistrial -- it appears that compromise was a primary factor in Hubbard's decision.

Consequently, the verdict is not a proper one and cannot be received. The motion for a mistrial is granted.