### 22473. VANLEEWARD v. THE STATE.

SUBMITTED MAY 11, 1964—DECIDED JUNE 1, 1964—REHEARING DENIED JULY 7, 1964.

*D. L. Hollowell, Albert W. Thompson,* for plaintiff in error. *John H. Land, Solicitor General, Eugene Cook, Attorney General, Rubye G. Jackson, Assistant Attorney General,* contra.

MOBLEY, Justice. 1. The general grounds are without merit. The victim of the rape, a 17 year old high school girl, and her boy friend, also 17 years old and a student at Emory University, went to a football game together on the evening of October 19, 1963, and after leaving the game rode around in his automobile and parked on a dead end street. When they had been there about 15 minutes, the car door opened and the defendant thrust a pistol toward them and ordered the boy out of the car. Three

of the defendant's companions then appeared upon the scene. The defendant forced the victim's boy friend to get into the trunk of the car, and locked him in the trunk. Defendant then demanded that the young lady have sexual intercourse with him, and when she refused, threatened to kill her, beat her, and forced her to submit to him. She testified that there was only partial penetration the first time and that then one of the other boys raped her, and then defendant came back again and had full sexual intercourse with her. His other two companions also raped her. Her testimony was corroborated by her ripped blouse, torn slip, and torn panties, and by pictures showing bruises on her face and neck and testimony of a doctor that his examination revealed bruises on her face, neck, and breast, that her hymen had been recently ruptured, and that she was bloody and that the labia of her vagina were bruised. Her companion, who was locked in the trunk, heard her begging them not to bother her, and he plead with them to no avail, not to harm her. In addition to the foregoing, the defendant gave the officers a signed statement in which he admitted his presence at the scene of the crime, but denied having intercourse with her, saying that his three companions did, one of them twice. The evidence overwhelmingly supports the verdict, showing a cruel, inhumane, bestial rape of a young 17 year old high school girl, who had never before had intercourse, by four males, one of whom, the defendant, forced himself upon her twice.

2. Exceptions to conclusions and rulings by the trial judge upon preliminary and collateral issues, such as a plea in abatement, challenge to the array, and motion to quash the indictment, cannot properly be made grounds of a motion for new trial, but are proper assignments of error in the bill of exceptions. *Herndon v. State,* 178 Ga. 832 (1) (174 SE 597); See Herndon v. Georgia, 295 U.S. 441 (2) (55 SC 794, 79 LE 1530); *Frady v. State,* 212 Ga. 84 (1) (90 SE2d 664); *Hargroves v. State,* 179 Ga. 722 (1) (177 SE 561); *Mattox v. State,* 181 Ga. 361 (1) (182 SE 11); *Ledford v. State,* 215 Ga. 799 (1) (113 SE2d 628); *Ferguson v. State,* 219 Ga. 33, 35 (4) (131 SE2d 538). The reason for the rule is sound and logical, for if the plea in abatement, the challenge to the array, or the motion to quash the indictment are

valid, the indictment is null and void and all future proceedings would be nugatory. Thus there could be no new trial, nor would the plaintiff in error desire one.

While the foregoing rule has been well established by many decisions of this court over many years, the plaintiff in error contends that an allegation in his bill of exceptions is sufficient to constitute a valid assignment of error on special grounds 1, 2, and 10 of his amended motion for new trial, which complain of the denial of the plea in abatement, the challenge to the array, motion to quash and abate the action; which allegation is as follows, "Each and every ground of said motion for new trial, as amended, and the rulings thereon are incorporated herein by reference and plaintiff in error specifically assigns error upon the respective rulings on each ground of the said motion for new trial, as amended, upon the grounds hereinabove stated." While this is a backhanded and unorthodox way of making exceptions in the bill of exceptions to rulings of the trial court and not recommended for use in the future, we are of the opinion that this is a valid assignment of error to the special pleas, as the exception can be construed as incorporating in the bill of exceptions the complaints in the motion for new trial to the rulings of the trial court on the special pleas and specifically assigns error thereon.

We now come to the merits of the exceptions to the ruling of the court on the special pleas. The basis for the exception to the dismissal of the plea in abatement and the challenge to the array is that Negroes have been systematically and arbitrarily excluded from service on grand and petit juries in Muscogee County and were so excluded from the grand jury which indicted the defendant and from the petit jury panel from which the trial jury in his case was selected.

(a) As to the plea in abatement, the trial judge dismissed that plea, and properly so, because it was based upon grounds which are proper matters for a challenge to the array of the grand jurors, and it failed to show, as is required, that the defendant had not been given notice and opportunity to present such grounds by a challenge to the array. See *Harris v. State,* 191 Ga. 243, 249 (5) (12 SE2d 64); *Turner v. State,* 78 Ga. 174;

*Tucker v. State,* 135 Ga. 79 (68 SE 786). In fact, the evidence shows that he had such notice.

(b) The challenge to the array. After a careful review of the evidence submitted by the defendant and the State on the issues of whether Negroes have been and were systematically and arbitrarily excluded from service on juries in Muscogee County and particularly on the panel of petit jurors from which the trial jury which tried him was selected, we find that the evidence does not support the defendant's contention, but on the contrary, amply supports the judgment of the trial court denying the challenge to the array. See *Code* § 59-803.

The evidence disclosed that the jury list from which the trial jury in this case was drawn was compiled in 1962; that it was compiled in compliance with *Code Ann.* § 59-106, which requires the jury commissioners to select from the books of the tax receiver upright and intelligent citizens to serve as jurors; that the State law requires a separate tax digest for white and colored persons, and that the tax commissioner in compiling the jury list reviewed each name on each digest, and beginning with the letter A, they considered each name thereunder on the white list and on the colored list and went through the alphabet in this manner selecting and placing on slips (all of the same color) the names of the jurors selected, as required by law. The jury commissioners testified that they compiled the list without regard to race, color, or religion, and the clerk of the superior court who served as secretary testified that he recorded the names of those selected for jury duty on slips of paper without regard to race or color and that when the names were placed in the jury box, there was no way to tell which were white or colored. The evidence is undisputed that names of Negroes are in the jury box, that they are drawn at each term of court for jury service, and that the jury commissioners who made up the list selected the jurors without regard to race, color or creed. There was no evidence as to how many or how few of the names on the jury list were white or colored, nor what percentage were white or colored, nor that any person was excluded because of color.

The evidence disclosed that there were 39,170 names on the tax digest, 35,854 being white and 5,136 colored, and that there

are less than 3,500 names in the jury box. Obviously, many upright and intelligent white and colored citizens are not included among those selected for jury service. The object of the law is to secure an ample supply of jurors for the operation of the courts and to secure those citizens who are intelligent and upright —those who would make competent jurors—and the jury commissioners testified that they secured information about each juror, from personal knowledge, inquiry from those who knew them, and from varied sources. We find no evidence in the record of arbitrary and systematic exclusion of Negroes from the jury from which the panel trying the defendant was selected.

The evidence was ample to support the judgment of the trial judge denying the challenge to the array.

(c) The motion to quash the indictment was based on the contention that *Code Ann.* § 26-1302 (Cobb 787, Ga. L. 1866, p. 151; 1960, p. 266) fixing punishment of death for conviction of rape is unconstitutional in that it violates the 8th Amendment to the Constitution of the United States (*Code* § 1-808) and Art. I, Sec. I, Par. IX of the Constitution of Georgia (*Code Ann.* § 2-109) which prohibit the infliction of cruel and unusual punishment. The Supreme Court of the United States has recently, in Rudolph v. Alabama, 375 U.S. 889 (84 SC 155, 11 LE2d 119), answered this question adversely to defendant's contention, and this court in the recent case of *Sims v. Balkcom,* 220 Ga. 7 (2) (135 SE2d 766) held that, "the imposition of the penalty of death upon one who rapes a woman is not 'cruel and unusual' punishment which is inhibited by the 8th Amendment (*Code* § 1-808) of the Constitution of the United States or Art. I, Sec. I, Par. IX of the State Constitution (*Code Ann.* § 2-109; Const. of 1945)." Thus, this ground is without merit.

(d) Special ground 3 is without merit.

3. Special ground 4 complains that the trial judge erred in that he "overruled defendant's objection to oral and written statements of the defendant, which were not freely and voluntarily elicited by the defendant, as required by law," and was in derogation of the due process and equal protection clauses of the 14th Amendment of the United States Constitution and Art. I, Sec. I, Par. VI of the Georgia Constitution of 1945.

The ground insofar as it relates to oral statements is defective in that it fails to set out the oral statements or show where in the record they may be found; thus, the court is unable to determine what oral statements are objected to. The defendant gave a written statement to the police officers in which he admitted he was present when his three named companions had sexual intercourse with the victim, one twice, but denied he had anything to do with her. "To make a confession admissible, it must have been made voluntarily, without being induced by another, by the slightest hope of benefit or remotest fear of injury." *Code* § 38-411.

In his unsworn statement at the trial he stated that an officer grabbed him and told him he had better make a statement, and that another threatened him with a chair, and that he went ahead and gave them a statement. The officers denied this and testified that at no time did anyone physically abuse him, threaten him in any manner, or promise him any reward for a statement or any type of co-operation. They testified further that his mother and stepfather were present when he was taken into custody and that they made no request for counsel, and that while in custody the defendant at different times gave them three different statements as to where he was and whom he was with at the time of the commission of the crime, all of which they checked out and found false. It was only after they told him, some 24 hours after his arrest, that he had been identified from a lineup that he made his statement. In his statement to the jury he did not deny anything contained in the statement given the officers. The law relating to admissions of confessions and incriminatory statements is fully and well set out in *Bryant v. State,* 191 Ga. 686 (1) (13 SE2d 820). See also *Garrett v. State,* 203 Ga. 756 (1), 762 (48 SE2d 377). Applying the law on admission of incriminatory statements, as there stated, to the facts here, clearly the trial judge did not err in admitting the defendant's statement given the officers in evidence. Ground 4 is without merit.

4. Special grounds 5, 6, and 7 complain of admission in evidence of a red shirt, a pair of men's pants, and a piece of asphalt. The victim and her companion both testified that the defendant had on a red shirt at the time of the attack. The officers found

a shirt which fit their description among defendant's clothes. The victim described the trousers defendant was wearing. A pair of trousers were found among defendant's clothing at his home, and the victim picked the pair offered from several pairs shown her by the officers. These articles of clothing are circumstances corroborating the identity of the defendant and were properly admitted. A piece of asphalt with human blood stains on it was admitted in evidence. An officer testified that this was a piece of asphalt taken from the pavement, where the crime occurred, several days thereafter, which was shown in a picture taken the next morning. It was admissible as a circumstance for whatever the jury felt it might be worth. It was not error to admit the asphalt.

5. There is no merit in special ground 8. The answer of the witness was responsive to counsel's question, and furthermore, was harmless.

6. Special ground 9 complains of the admission over objection of defendant of certain pubic hairs, one of which was taken from the fly of a pair of defendant's pants admitted in evidence as having been worn by him at the time of the rape, pubic hairs taken from the body of the defendant, and other pubic hairs taken from the body of the victim of the rape. We think the hairs were properly identified and that the continuity of handling was sufficiently shown to establish that the hair taken from defendant's fly was the hair identified by an expert as having Caucasian characteristics, and those taken from defendant's body were those identified as having Negroid characteristics, and those taken from the victim as having Caucasian characteristics. Special ground 9 is without merit.

*Judgment affirmed. All the Justices concur.*