### 22979. BROOKINS v. THE STATE.

182

Submitted June 14, 1965—Decided July 8, 1965—Rehearing denied July 26, 1965.

*C. B. King,* for plaintiff in error.
*Harvey L. Jay, Solicitor General,* contra.

Mobley, Justice. On January 25, 1965, John William Brookins, a Negro, was indicted by a Crisp County grand jury for assault with intent to murder one Lucius Childers, a white man. This was the second indictment returned against the defendant, Brookins, for the same offense, the first indictment of October 26, 1964, having been dismissed by the State. The record shows that during December of 1964 the jury list and selection procedure had been revised in an effort to insure selection of jurors without discrimination based upon race. The January indictment was returned by a grand jury selected from the revised list of prospective jurors.

Defendant filed a motion to quash the indictment and a challenge to the array of traverse jurors on February 2, 1965, alleging that the grand jury and the traverse jury were composed entirely of white persons; that for a period of more than 75 years no Negroes have been called for grand jury or traverse jury service prior to the October 1964 term of the court; that the grand jury list from which the present panel of jurors who returned the present indictment was drawn and the list from which the present panel of traverse jurors was drawn are composed of a disproportionately high number of whites as opposed to Negroes; that there are numerous Negroes of the county who are competent and legally qualified to serve as jurors; that there is at present arbitrary and systematic exclusion of Negroes from jury duty solely because of their race, and that during the

October 1964 term of the Superior Court of Crisp County and subsequent thereto there has been an inclusion of a token number of names of Negroes on the jury lists. It is also alleged that, at present, Negroes have their names arranged on the jury list "at the particular lettered category and alphabetically out of order," that the names of Negro females are listed without the title of "Miss" or "Mrs." while the names of white females do have such title; that the selection of the grand jury and of the traverse jury was carried out in violation of the guarantees of equal protection of the law and due process of the law under the 14th Amendment of the United States Constitution by reason of arbitrary and systematic exclusion of Negroes from service on the grand jury and the present panel of prospective traverse jurors; and that *Code* § 59-107 (sic) providing for the selection from the tax digests of the most experienced, upright and intelligent citizens to serve as jurors, and *Code* § 92-6307 requiring that the names of colored and white taxpayers shall be made out separately on the tax digest, when taken together, and in their application, constitute a violation of defendant's rights to equal protection of the law and due process of the law under the 14th Amendment of the United States Constitution because these statutes require the jury commissioners to make their selection of jurors by a process that makes a distinction between whites and Negroes. After a hearing, the trial court denied the motion to quash and the challenge to the array.

The exception is to that judgment.

The evidence at the hearing on the motion to quash and the challenge to the array, set out in part in the opinion, consisted entirely of the testimony of the members of the jury commission of Crisp County, namely, Joseph W. Bridges, chairman of the commission, Carl Whelchel, Jr., Anthony LaPorte, Charles S. Worthy, John T. Williams, and N. O. Stephens, and the testimony of James L. Dorough, Clerk of the Superior Court of Crisp County, and that of C. B. King, the attorney for defendant.

■ The constitutional principle raised in this case has been summed up by the Supreme Court of the United States in Carter v. Texas, 177 U.S. 442, 447 (20 SC 687, 44 LE 839) as follows: "Whenever by any action of a State, whether through its legis-

lature, through its courts, or through its executive or administrative officers, all persons of the African race are excluded, solely because of their race or color, from serving as grand jurors in the criminal prosecution of a person of the African race, the equal protection of the laws is denied to him, contrary to the 14th Amendment of the Constitution of the United States," citing Strauder v. West Virginia, 100 U.S. 303 (25 LE 664) and others. "The principle is equally applicable to a similar exclusion of negroes from service on petit juries." Norris v. Alabama, 294 U.S. 587, 589 (55 SC 579, 79 LE 1074) citing Strauder v. West Virginia, supra; Martin v. Texas, 200 U.S. 316 (26 SC 338, 50 LE 497). "Although the state statute defining the qualifications of jurors may be fair on its face, the constitutional provision affords protection against action of the State through its administrative officers in effecting the prohibited discrimination." Norris v. Alabama, supra, citing Neal v. Delaware, 103 U.S. 370 (26 LE 567); Carter v. Texas, supra.

A prima facie case of arbitrary and systematic exclusion of Negroes from jury service on the basis of race may be established by proof of a long and continued history of the exclusion of Negroes from juries. Swain v. Alabama, 380 U.S. 202 (85 SC 824, 13 LE2d 759); Norris v. Alabama, supra; Pierre v. Louisiana, 306 U.S. 354 (59 SC 536, 83 LE 757); Smith v. Texas, 311 U.S. 128 (61 SC 164, 85 LE 84); Hernandez v. Texas, 347 U.S. 475 (74 SC 667, 98 LE 866); Neal v. Delaware, supra. The evidence is undisputed that prior to the December 1964 term of the Superior Court of Crisp County there had been a long history of 75 years in which only a few Negroes had served on a jury in Crisp County. This is sufficient to establish a prima facie case of discrimination against Negroes as a group in the selection of the grand jury which returned the present indictment, and of the panel of traverse jurors. The jury commission recognized the fact as did the solicitor general, and the revision of the jury lists prior to the second indictment of this defendant was to correct that situation and remove any and all discrimination in the preparation of the grand and traverse jury lists of Crisp County.

The question presented here is whether there was evidence

sufficient to rebut the prima facie case of the violation of defendant's constitutional rights. The Federal cases where discrimination was found may be characterized by their lack of rebutting evidence. In Norris v. Alabama, 294 U.S. 587, supra, the jury commissioner testified that there had been no discrimination in the selection of the jurors, that Negroes were not excluded because of their failure to meet the qualifications of age, integrity, etc., but that Negroes were "never discussed." In short, they were not considered for jury service. There was further testimony that specified Negroes of 30 or more in number were qualified for service on the grand jury and that a large group of nearly 200 Negroes were qualified to serve as trial jurors, and no testimony was given in rebuttal of these assertions. The court, in reversing the conviction and the denial of the motion to quash the indictment and the motion to quash the trial venire, stated that the conclusion that the exclusion of Negroes from juries was because there were none possessing the requisite qualifications cannot be sustained.

In Pierre v. Louisiana, 306 U.S. 354, supra, a prima facie case of discrimination was made and there was evidence that there were many Negroes qualified to serve on juries in the parish where the indictment was returned. The court noted that the jury commissioners were not made witnesses by the State and there was no evidence that Negroes were disqualified because of bad character or criminal records. It concluded that the prima facie case was not met by the State.

In Smith v. Texas, 311 U.S. 128, supra, and Cassell v. Texas, 339 U.S. 282 (70 SC 629, 94 LE 839) the deciding factor appeared to be that the jury commissioners did not know any Negroes who might be qualified for jury service. In the former case the court, in reversing the conviction, concluded that "Where jury commissioners limit those from whom grand juries are selected to their own personal acquaintance, discrimination can arise from commissioners who know no negroes as well as from commissioners who know but eliminate them. If there has been discrimination, whether accomplished ingeniously or ingenuously, the conviction cannot stand." In the latter decision, also reversing a conviction, the court held that "with

no evidence to the contrary we must assume that a large proportion of the Negroes of Dallas County met the statutory requirements for jury service," citing Pierre v. Louisiana, 306 U.S. 354, supra, and that it was "the duty of the commissioners to familiarize themselves fairly with the qualifications of the eligible jurors of the county without regard to race and color," citing Smith v. Texas, supra.

In Eubanks v. Louisiana, 356 U.S. 584 (78 SC 970, 2 LE2d 991) as in Pierre v. Louisiana, 306 U.S. 354, supra, there was evidence that there were a substantial number of Negroes qualified for jury service among the Negro population, and that defendant, a Negro, had been indicted by an all-white grand jury for the murder of a white woman. The court reversed the conviction of defendant saying, in effect, that there was no evidence to rebut the prima facie case of exclusion of Negroes from grand juries because of their race. A like result was reached in Patton v. Mississippi, 332 U.S. 463 (68 SC 184, 92 LE 76) and in Arnold v. North Carolina, 376 U.S. 773 (84 SC 1032, 12 LE2d 77).

We are aware that the Supreme Court of the United States has held that mere assertions by public officials charged by law with preparing the jury list that they did not exclude prospective jurors because of their race are not sufficient to meet a prima facie case of arbitrary and systematic exclusion of Negroes from juries. Norris v. Alabama, 294 U.S. 587, supra; Hernandez v. Texas, 347 U.S. 475, supra. However, in addition to the testimony of each commissioner and of the Clerk of the Superior Court of Crisp County that none of the commissioners left off or added to the jury list anyone because of his race, there is evidence here sufficient to meet and overcome the prima facie case of unconstitutional exclusion of Negroes from jury service.

Counsel for defendant testified himself that there were 4,758 white taxpayers and 1,360 Negro taxpayers listed on the tax digest of the county. Yet there is no evidence as to the number of whites and Negroes on the present grand jury list or the grand jury which returned the indictment. See *Vanleeward v. State*, 220 Ga. 135, 138 (137 SE2d 452); Martin v. Texas, 200 U.S. 316, supra. The State contends that there were two Negroes

on a panel of 30 from which 21 were chosen, including one Negro, which returned the indictment. Defendant contends that there were no Negroes on the grand jury. There is testimony to show that there could have been a "disproportionate number" of whites as compared to Negroes on the list of jurors. However, proportionate representation of the races is not necessary to guarantee equal protection of the law to the accused. *Heard v. State*, 210 Ga. 523 (81 SE2d 467); Swain v. Alabama, 380 U.S. 202, supra; Akins v. Texas, 325 U.S. 398 (65 SC 1276, 89 LE 1692).

The commissioners sought the advice and counsel of three others, Meeks, an ex-sheriff and resident of Crisp County for some 25 to 30 years whom the clerk of the superior court testified to as knowing many Negroes in the county, Moore, the tax commissioner who also knew many Negroes in the community according to the clerk, and Outlaw, a Negro merchant who was about sixty years of age and who the clerk testified was, in his opinion, familiar with many Negroes in the community. The clerk, J. L. Dorough, has served in that capacity for 24 years, has lived in the county all of his seventy-one years, and also serves as an ex-officio member of the jury commission. These men, with the possible exception of Dorough, helped the commissioners primarily by informing them of the nature and character of those persons on the tax digest the commissioners did not know. It appeared that Outlaw assisted in passing upon all the prospective Negro jurors. It is not shown that he did not assist in passing upon whites. According to Dorough, Outlaw was familiar with many of the Negroes on the prospective list. The other aides assisted in passing upon both whites and Negroes. Thus, the commissioners made a concerted effort to acquaint themselves with those on the list whom they did not know, Negroes as well as whites.

We are of the opinion that the commissioners succeeded in fulfilling their duty to familiarize themselves fairly with the qualifications of the eligible jurors of the county without regard to race and color. Swain v. Alabama, 380 U.S. 202, supra; Smith v. Texas, 311 U.S. 128, supra; Cassell v. Texas, 339 U.S. 282, supra; Hill v. Texas, 316 U.S. 400 (62 SC 1159, 86 LE 1559).

The method of the selection of prospective jurors does not have to guarantee that all groups in the community will be fully represented. Swain v. Alabama, supra. Here, as in the Swain case, there was "no studied attempt to include or exclude a specified number of Negroes." On the contrary, there was a studied and forthright attempt to review the names of all prospective jurors, Negroes and whites, and include or exclude them as jurors according to their qualifications as individuals and not as members of a racial group.

There was no evidence that any certain Negroes or group of Negroes excluded from the list were qualified to serve on a jury. Cf. Norris v. Alabama, 294 U.S. 587, supra; Pierre v. Louisiana, 306 U.S. 354, supra. According to the undisputed testimony of commissioner Worthy, all the Negroes on the tax digest who were qualified were put on the grand and traverse jury list. Hence, it appeared that those on the list not selected for jury service, including Negroes and whites, were excluded because they failed to measure up to the requisite standards of intelligence and moral uprightness and not because of their race.

The fact that the names of Negroes were segregated from those of whites on the tax digest, and the fact that the names of female Negroes were not entitled "Miss" or "Mrs.", as were the names of white females do not show that Negroes were added to or excluded from the jury list solely because of their race. The Supreme Court of the United States in Brown v. Allen, 344 U.S. 443 (73 SC 397, 97 LE 469) dealt with the propriety of the North Carolina law requiring the use of tax lists for prospective jurors. As the constitutional attack there centered upon the imbalance of the racial composition of the names on the tax lists, it is apparent that the names of whites and Negroes were distinguished on the list. In holding that their use was not in violation of the 14th Amendment the court said: "Our duty to protect the federal constitutional rights of all does not mean we must or should impose on states our conception of the proper source of jury lists, so long as the source reasonably reflects a cross-section of the population suitable in character and intelligence for that civic duty." Brown v. Allen, supra, p. 474. To conclude that the facts here establish that race was the dominant

factor in the selection of the jurors would constitute a gross misinterpretation of the evidence which must be considered in its entirety.

The commissioners testified that they used the same·procedure in passing upon prospective Negro jurors as they did in passing on whites. This is positive evidence of impartiality and is stronger proof than that in Swain v. Alabama, supra, where there was merely "no evidence that the commissioners applied different standards of qualifications to the Negro community than they did to the white community." See also the casenote at 78 Harv. L. R. 1658 which points up the problem faced by the courts of guaranteeing a "color blind" government, including, of course, the elimination of race as a criterion in the selection of juries, and the desirability of maintaining the present systems by which those who chose juries have a fair amount of discretion in their selection. Discretionary selection tends to secure a higher quality of juror than would random selection.

The evidence is sufficient to meet the prima facie case of discrimination against Negroes in the selection of the grand and traverse juries based upon prior discrimination, and the trial judge properly denied the motion to quash the indictment and the challenge to the array.

■ It is contended that *Code Ann.* § 59-106 (Ga. L. 1878-79, pp. 27, 34, as amended) (set out verbatim but erroneously designated as *Code* § 59-107 by counsel in his motion and bill of exceptions) which provides that the most experienced, intelligent and upright persons are to be chosen from the tax digest as grand jurors and *Code* § 92-6307 (Ga. L. 1894, p. 31) which requires that the names of whites and Negroes be in separate places in the tax digest, are, when taken together, a violation of the 14th Amendment guarantees of equal protection of the laws and due process. This contention is based on the proposition that these statutes require the jury commissioners to make their selection of jurors by a method which distinguishes between whites and Negroes.

It is an established rule that all presumptions are in favor of the constitutionality of an Act, and it cannot be set aside unless the conflict with constitutional requirements is clear and

190

palpable. *Estes v. Jones,* 203 Ga. 686 (48 SE2d 99); *Cartersville Candlewick Inc. v. Huiet,* 204 Ga. 609 (50 SE2d 647). Also, where the statute is challenged as a whole, the attack will fail unless the statute is invalid in every part for some reason alleged. *Williams v. Ragsdale,* 205 Ga. 274 (53 SE2d 339). Statutes are to be construed in connection and in harmony with existing law, and their meaning and effect will be determined with reference not only to the common law and the Constitution but also to other statutes and decisions of the courts. *Spence v. Rowell,* 213 Ga. 145 (97 SE2d 350); *Hill v. Busbia,* 217 Ga. 781, 782 (125 SE2d 34, 93 ALR2d 1241).

Guided by these principles we hold, on the merits, that the provisions of the Georgia Code here under attack are not violative of the 14th Amendment of the United States Constitution as a whole nor in any of their parts. The fact that they necessitate a distinction between the names of Negroes and of whites as they are designated on the tax list does not point up a clear and palpable conflict, if any, with the 14th Amendment. These statutes are well capable of a construction in harmony with constitutional requirements and are to be so construed. Hence, they do not require a distinction between Negroes and whites in the *method* of selecting jurors solely because of their racial difference; nor do they require the selection of jurors in any manner which is repugnant to the Constitution of the United States. See *Vanleeward v. State,* 220 Ga. 135, supra; Brown v. Allen, 344 U.S. 443, 474, supra.

*Judgment affirmed. All the Justices concur.*