23956. HINTON v. THE STATE.
23957. ANDERSON v. THE STATE.

SUBMITTED FEBRUARY 14, 1967—DECIDED FEBRUARY 23, 1967—
REHEARING DENIED MARCH 9, 1967.

*C. B. King,* for appellants.

NICHOLS, Justice. █ It was stipulated that defendants were represented by counsel on April 5, 1966, that commitment hearings were held on the fifth and sixth of April, 1966, where the defendants were represented by counsel and the indictments were returned on April 26, 1966. No challenge to the array of the grand jury was made prior to indictment although the defendants were represented by counsel and had been represented by counsel for three weeks prior to such indictments. Under the decision in *Blevins v. State,* 220 Ga. 720 (3) (141 SE2d 426), and the numerous cases cited therein, the motions to quash the indictments on this ground are without merit as such contention must be treated as having been waived.

█ The challenge to the array of the traverse jury was properly overruled. The contention of the defendants is basically the same as that made in *Whitus v. State,* 222 Ga. 103 (149 SE2d 130), reversed by the United States Supreme Court (Whitus v. Georgia, 385 U. S. 545 (87 SC 643, 17 LE2d 599)), and it is contended that such decision is controlling in the cases

sub judice. The decision in that case, based upon entirely different circumstances, in nowise controls the present cases. While in both cases the jury was selected from a segregated tax digest as was required by Georgia statutes (this is no longer required, see Ga. L. 1966, p. 393), there the similarity ends. The evidence in the *Whitus* case showed a "revision" of an old jury list which had previously been declared to show discrimination while in the present case the evidence showed a completely new jury list made up from the tax digest without reference to the old jury list. In *Whitus* the jury commissioners relied completely upon their own knowledge of the people in the community while in the present cases the jury commissioners sought information from others including a Negro business man in the community.

These cases arose in Crisp County, as did the case of *Brookins v. State,* 221 Ga. 181 (144 SE2d 83), where the same question was presented for decision and the jury selection approved. The evidence in the *Brookins* case was stipulated as part of the evidence in the present cases and the additional evidence adduced in no way requires a different result. The percentages of Negroes on the tax digest in Crisp County were shown to be 22 percent and on the traverse jury actually drawn 13.7 percent (44 white and 7 Negro). This is not such a disparity as to authorize a conclusion on this ground alone that discrimination exists. See *Brookins v. State,* supra, citing Swain v. Alabama, 380 U. S. 202 (85 SC 824, 13 LE2d 759). Nor is the requirement that jurors be selected from a tax digest unconstitutional as contended by the defendants. See Brown v. Allen, 344 U. S. 443 (73 SC 397, 97 LE 469).

■ In case numbered 23957 the defendant demurred and sought to attack the constitutionality of the statutes under which he was indicted as being too vague and uncertain to set forth a standard of conduct and therefore a violation of the due process clause of the Constitution of the United States as secured by the Fourteenth Amendment and the due process clause of the Constitution of the State of Georgia.

*Code* § 26-7202 provides: "Contemptuous use or defacement. —It shall also be unlawful for any person, firm or corporation to mutilate, deface, defile or contemptuously abuse the flag or

national emblem of the United States by any act whatever. (Acts of 1917, p. 203)." The Act of 1960, supra, insofar as the case sub judice is concerned makes unlawful the same conduct as it applies to the flag or emblem of the State of Georgia.

In Halter v. Nebraska, 205 U. S. 34, 41' (27 SC 419, 51 LE 696), the United States Supreme Court upheld a statute of the State of Nebraska which prohibited the use of the national flag as a part of any advertisement. The basis of such decision was the right of the people to protect such flag from disrespectful conduct and insults. The statute upon which *Code Ch.* 26-72 is based was enacted after the decision in Halter v. Nebraska, supra, and followed the language of the Nebraska statute. Accordingly, it must be assumed that the General Assembly was cognizant of the above decision. It was there held: "One who loves the Union will love the State in which he resides, and love both of the common country and of the State will diminish in proportion as respect for the flag is weakened. Therefore a State will be wanting in care for the well-being of its people if it ignores the fact that they regard the flag as a symbol of their country's power and prestige, and will be impatient if any open disrespect is shown towards it." The conduct sought to be prohibited by such statute is conduct which shows open disrespect for such flag, and no question of freedom of speech is here involved. The language of such statute making it unlawful to mutilate, deface, defile or contemptuously abuse such flags *by any act* is not vague, uncertain or indefinite, and such statutes are accordingly not unconstitutional for any reason urged in the demurrers attacking them. Nor was the indictment, which expressly stated the unlawful conduct of the defendants, subject to demurrer as being vague or uncertain.

(a) In view of the holding in the preceding division of the opinion it was not error, in the absence of a proper request, to fail to define in the charge to the jury the terms contained in such statutes which needed no definition in order to be understood by the jury.

■ The next enumeration of error to be dealt with concerns a motion for mistrial which was overruled in case numbered 23956. After deliberation the jury returned to the courtroom

■

178

and its verdict was published. Counsel for the defendant then began to poll the jury and as the second juror was being polled a colloquy took place which counsel for the defendant interpreted as showing that the verdict returned was not the verdict of such juror. At this point, on motion of the solicitor general, the jury was instructed to return to the jury room and return a unanimous verdict if possible and if not possible to so inform the court. After further deliberation the jury returned to the courtroom and published another verdict which apparently (as far as can be observed from the transcript), consisted of the original written verdict with the additional words "by unanimous vote" added after "guilty." Counsel for the defendant objected to such verdict as not being a new verdict but the same verdict on which a question arose and requested that the jury be instructed to return to the jury room and write out a new verdict which request was granted. Again the jury returned to the jury room and at this point counsel for the defendant moved for a mistrial based upon the colloquy which took place when the jury was being polled after the original verdict was published. This motion was overruled and thereafter the jury returned to the courtroom with a rewritten verdict of guilty and upon being polled each member of the jury affirmed that it was his verdict.

The procedure followed by the trial court in directing the jury to return to the jury room and arrive at a unanimous verdict if possible was not error as this is the proper procedure where a poll of the jury discloses other than a unanimous verdict of the jury. *Macon R. & Light Co. v. Barnes,* 121 Ga. 443, 448 (49 SE 282).

■ Nor was it, after the verdict was published and the jury returned to the jury room to correct it as to form, error to overrule a motion for mistrial or hear evidence because of the alleged incompetency of one of the jurors.

■ All who participate in the commission of a misdemeanor are principals. *Parmer v. State,* 91 Ga. 152 (16 SE 937); *Crocker v. State,* 103 Ga. App. 870 (121 SE2d 166).

"Intention may be manifested by the circumstances connected with the perpetration of the offense, and the sound mind and discretion of the person accused." *Code* § 26-202.

The evidence disclosed that the defendants were involved in a "freedom march" in Crisp County, Georgia, and a crowd (estimated by various witnesses to be as many as 250 persons) had gathered at the county courthouse. The defendants moved over to the flagpole and proceeded to lower the flags. The defendant Hinton in his unsworn statement said the Negro community was in a state of mourning and he intended to lower the flag to half-mast to symbolize the state of mourning. The defendant Anderson made no statement. At this point, as the flag was being lowered others in the group closed in, removed the flags from the lanyard, actually tearing the American flag and damaging the State flag, both of which were displayed to the jury, and proceeded to shake the flags in the faces of the police officers who were stationed nearby. At this point James Burch took possession of the flags from the demonstrators and delivered them to the county authorities. The evidence authorized the verdicts.

*Judgments affirmed. All the Justices concur.*