# Commonwealth v. Carney

*Peter Kemery,* Assistant District Attorney, for Commonwealth.

*Arthur L. Berger,* for defendant.

DOWLING, J., May 15, 1972.—Plaintiff was convicted by a jury of desecrating the American flag.[1] He appeared in public wearing a T shirt with an American flag on the back superimposed by a swastika with the words "America, the Fourth Reich." He was apprehended when he pulled a flag from his pocket and sat on it.

Motions for arrest of judgment and for a new trial were filed and the reasons in support thereof will be discussed seriatim.

*Did the court abuse its discretion in refusing defendant's request for a continuance?*

The grant or refusal of a petition for continuance lies within the sound discretion of the lower court and its action will not be reversed unless there is an abuse of discretion: Commonwealth v. DiPasquale, 431 Pa. 536 (1968). Defendant's counsel, Arthur L. Berger, Esq., appeared before the Hon. Homer L. Kreider, President Judge, Dauphin County,* on June 17, 1971, and requested that the case which was scheduled for trial June 29, 1971, be continued. Mr. Berger requested the continuance because he said that while he had become aware of the trial as early as June 10th or 11th, he was not retained until June 15th and that this left him insufficient time to prepare for trial.

The alleged offense occurred October 15, 1970; a

---

[1] Act of June 24, 1939, as amended, 18 PS §4211.

* Assumed senior judge status January 3, 1972.

true bill was returned December 9, 1970, and defendant was arraigned December 17, 1970. At the time of his arraignment he was represented by attorney Edward S. Finkelstein. Trial was scheduled for March 4, 1971, but defendant failed to appear.

A conflict of interest developed and new counsel was obtained.

Defendant's present attorney is a lawyer of some 20 years' experience and a member of the largest law firm in the county. The case was not an involved one from a factual standpoint and had actually been listed on a waiver for trial by the court prior to the entry of Mr. Berger into the case. There is also testimony that prior counsel was advised that the case would not be continued under any circumstances.

Mr. Berger was offered trial on any day during the second week of jury trials commencing June 21st but advised the district attorney's office that none of these dates would be convenient.

The trial was commenced on Thursday, June 24th, and concluded the following morning. Despite Mr. Berger's statement in the brief that he tried the case very poorly, he did, in fact, represent his client most ably. The record would indicate that the Commonwealth called only the two police officers and that defendant had some eight witnesses from various parts of the State to testify in his behalf.

In view of the fact that defendant's attorney had one week to prepare his case after his motion for a continuance was denied, and considering that it was not a complex case and was well tried, it cannot be said that the court in any way abused its discretion in denying a continuance, particularly since counsel of record had been advised as early as June 1st that he would have to withdraw. Also relevant is defendant's failure to ap-

pear at the prior term of court in March when the case was originally scheduled.

Defendant in his motion for a continuance also indicated that he wished to file various pretrial motions, and it should be noted that these motions were filed and argued before President Judge Kreider on June 18, 1971.

*Was the defendant denied due process in the selection of the trial judge?*

Defendant attacks what he terms the Dauphin County method of choosing the judge to preside at a criminal trial, averring that the assignment of criminal cases is determined by the district attorney's office.

Prior to the trial, defendant filed a motion alleging that the judge to whom the case had originally been assigned, President Judge Homer L. Kreider, should disqualify himself because of his alleged bias and that all other judges of the Dauphin County bench should be disqualified because they were assigned criminal cases by the district attorney's office. While there is no evidence in the record as to the method of assignment of cases, defendant did ask for an evidentiary hearing to develop these facts at the conclusion of his trial, which motion was denied.

Assuming that the district attorney's office does handle the criminal calendar, defendant has failed to show that he was in any way prejudiced by the selection of the particular judge to whom the case was ultimately assigned. As noted above, defense counsel's original objection on this matter was that the district attorney deliberately chose President Judge Homer L. Kreider to try the case. However, once criminal court commenced, Judge Kreider was otherwise engaged and the case was sent to another courtroom.

It would seem to be difficult to please defendant, and apparently what he is in essence arguing is that the

matter should not have been tried in Dauphin County at all. The corollary of this proposition would be that in order to satisfy defendant, the court would have to violate the principles of venue and jurisdiction and transfer this case to another county.

In any event, the case law on point does not support defendant's position. In Commonwealth v. Greene, 58 Del. Rep. 505 (1970), the court clearly held that a defendant is not denied a fair and impartial trial merely because the district attorney's office selects the trial judge before whom the case is to be heard.

Commonwealth v. Moncak, 55 Lack. 57 (1953), also upheld the power of the district attorney to control the order of calling cases on the trial list.

*Is the Pennsylvania Flag Desecration Statute unconstitutional?*

Defendant asserts that the statute under which he was convicted is unconstitutional because it violates his first amendment right to free speech, is not a valid exercise of governmental power, and its language is so broad and vague that application violates due process.

There is a presumption that the legislature in enacting this statute did not intend to violate the Constitution of the United States or of this Commonwealth: Act of May 28, 1937, P. L. 1019, sec. 52, 46 PS §552. Section 58 of the Statutory Construction Act does call for strict construction of penal provisions. It was stated, however, in Commonwealth v. Butler, 189 Pa. Superior Ct. 399, 403 (1959), that:

"The rule of strict construction does not require that the words of a criminal statute must be given their narrowest meaning or that the evident legislative intent should be disregarded: Commonwealth v. Mason, 381 Pa. 309, 112 A. 2d 174. The canon of strict construction of penal statutes is not an inexorable command to

override common sense and evident statutory purpose."

The purpose of this law is to protect the American flag from desecration and to promote its respectful use and, equally important, to prevent breaches of the peace. These are proper legislative purposes and many States have adopted antidesecration statutes with similar wording whose constitutionality has been upheld: People v. Cowgill, 274 Cal. App. 2d 923, 78 Cal. Rptr. 853 (1969); Hinton v. State, 223 Ga. 174, 154 S.E. 2d 246 (1967); People v. Radich 26 N.Y. 2d 114, 308 N.Y.S. 2d 846 (1970); Halter v. Nebraska, 205 U.S. 34 (1907).

Regardless of the major motivating factor behind its enactment, there was certainly a clear legislative purpose to prevent a breach of the peace. The Supreme Court of the United States long ago in Halter v. Nebraska, 205 U.S. 34, 41 (1907), stated:

" . . . Insults to a flag have been the cause of war, and indignities put upon it, in the presence of those who revere it, have often been resented and sometimes punished on the spot."

In State v. Peacock, 25 A. 2d 491 (Maine, 1942), the court, in discussing the general purpose of its flags statute, stated:

"The statute is designed to prevent that which would shock the public sense, and because of the publicity accompanying it would be likely to result in breaches of the peace."

It might be noted in the instant case the police officers testified that defendant was trying to create a disturbance by his actions, and if his conduct was allowed to continue, they feared that trouble would develop.

Defendant's main attack on the constitutionality of the statute centers around the first amendment guarantee of freedom of speech. He relies principally on

Street v. New York, 394 U.S. 576 (1969), where in a five to four decision the Supreme Court reversed a conviction and declared a statute unconstitutional which forbid insult to the flag either by word or acts. The charge against defendant grew out of both flag burning and speech and a majority of the court held that since the conviction might logically have been for speech alone or for both words and deed there was a first amendment violation. The court specifically refused to decide the issue of the constitutionality of the statute prohibiting certain *acts* with respect to the flag.

That the Supreme Court decision in Street v. New York, supra, did not involve prohibited conduct as distinguished from speech is evident from the decision in People v. Radich, supra, where the Court of Appeals of New York held that defendant's conviction of a violation of New York's flag desecration statute was not in contravention of his right of free speech under the first amendment to the United States Constitution where an act rather than words was involved. The United States Supreme Court affirmed the New York judgment. See Radich v. New York, 401 U.S. 531. The New York court stated, in effect, that even though non-verbal expression may be a form of speech, the same kind of freedom is not afforded those who communicate ideas by conduct as for those who communicate ideas by pure speech, and that the State may legitimately prohibit many forms of conduct with no exception made for activities to which some would ascribe symbolic significance.

In United States v. O'Brien, 391 U.S. 367 (1968), a draft card burning case, the court noted that the statute prescribing destruction of draft cards on its face dealt with conduct having no connection with speech. One of O'Brien's contentions was that the action he took with his draft card was a communication of ideas

by conduct and that this conduct expressed his position as regard the war and the draft. As to this, the court stated:

"However, even on the assumption that the alleged communicative element in O'Brien's conduct is sufficient to bring into play the First Amendment, it does not necessarily follow that the destruction of a registration certificate is constitutionally protected activity. . . . a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; *if the governmental interest is unrelated to the suppression of free expression;* and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest": 391 U.S. 367, 376-77, 88 S. Ct. 1673, 1678-79. (Italics supplied.)

It seems clear that while a person may be free to disseminate the ideas in which he believes, he may not break a valid law to do it. While it is true that violations of the flag desecration statute may occur as an expression of an idea, the prime purpose of the statute is not to insure suppression of such ideas but rather to insure preservation of the public peace.

We are not dealing with a statute which compels adherence to any belief or which prevents a person from speaking or even protesting upon an issue. Defendant isn't being forced to love his country or his flag or to pledge allegiance to either. There is no constitutional right to do as you please: Adderley v. Florida, 385 U.S. 39 (1966). It is true that freedom of speech and expression must be preserved, but law and order must be respected in so doing.

The contention that the statute is constitutionally vague in that it fails to provide any reasonable standard is without merit. It would appear that each pre-

scribed activity is clearly defined in plain and simple language.

The Supreme Court in Roth v. United States, 354 U.S. 476 (1967), defined the standard of definitiveness as follows:

"This Court . . . has consistently held that lack of precision is not itself offensive to the requirements of due process. ' . . . [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices . . .' "

There are a number of quite recent decisions upholding flag desecration statutes. In State v. Van Camp, 10 Crim. Law 2043 (Conn. October 5, 1971), conviction was upheld of a defendant for wearing a flag of the United States on the buttock portion of his trousers. The court noted that the misuse of the flag was a legitimate State interest and also commented that " 'there appears to be a reluctance on the part of our highest court to rule squarely on the First Amendment issue.' "

The Federal Flag Desecration Statute, 18 U.S.C. 700, was held not to be an unconstitutional restraint on free speech by the United States Court of Appeals for the District of Columbia in Joyce v. U. S., 10 Crim. Law 2089, October 26, 1971. There a protestor tore a small United States flag and tied it to his fingers while making a "V" sign. It was held that the national interest in protecting the dignity of the flag as a symbol was a sufficient legitimate State interest to justify the very minor limitation the statute placed on free symbolic speech.

The United States District Court for Southern Illinois in Sutherland v. Dewulf, 323 F. Supp. 740, denied relief to several women who had burned the flag, citing

the State's legitimate interest in preventing breaches of the peace and preserving the dignity of the flag as a symbol of unity.

The issue as to the constitutionality of the State's statute was before the Supreme Court in Commonwealth v. Haugh, 439 Pa. 212 (1970), but the court preferred to decide the case on a more narrow nonconstitutional ground as will be discussed below. The latest expression is found in the concurring opinion of Judge Spaulding in Commonwealth v. Lorenc, 220 Pa. Superior Ct. 64 (1971), where a conviction for violation of the flag desecration statute was upheld in a per curiam opinion. In a concurring opinion, Judge Spaulding stated that he did not believe that the act was unconstitutional.

*Did the defendant violate the statute?*

The statute under which defendant was convicted provides, in its relevant portion, "Whosoever in any manner . . . places . . . any word, figure, mark, picture, design, drawing, or any advertisement of any nature, upon any flag . . . or publicly . . . mutilates, defaces, defiles or tramples upon, or casts contempt either by words or act upon, any such flag . . . is guilty of a misdemeanor . . . This section does not apply to . . . any patriotic or political demonstration or decorations."

In passing upon a motion in arrest of judgment following a conviction for a crime, the sufficiency of the evidence must be evaluated upon the entire trial record. The evidence must be read in the light most favorable to the Commonwealth, including all reasonable inferences arising therefrom: Commonwealth v. Tabb, 417 Pa. 13 (1965); Commonwealth v. Hazlett, 429 Pa. 476 (1968).

Reviewing the record in the light of the above prin-

ciple, the following facts could have been established by the jury verdict.

On October 15, 1971, a rally was held on the steps of the State Capitol building in Harrisburg, Pa., to protest the tuition increase at Pennsylvania's 14 State teachers colleges. The crowd was estimated at approximately 5,200 people; mostly students from the various schools. Defendant, Carney, was present at the rally and was attired in a white T shirt on the back of which was the American flag superimposed by a swastika with the words "America, the Fourth Reich." While the rally was quite orderly, defendant was observed by the police officers milling through the crowd trying to agitate the other members of the gathering. Several members of the crowd reported to the police that defendant was wearing a flag with a swastika on it and complained of his conduct.

Shortly after 2 p.m., rain fell and the crowd began to disperse. In addition to his attire, defendant was carrying a flag and after the rain began he unfurled it, held it up, grinned at everyone to attract attention and then sat down on the flag. At this point, he was arrested.

One of the police officers testified that the reason the arrest was made was to prevent a riot.

There was ample evidence from which the jury could have found that defendant, even though he arrived with some of the students, was not connected with the rally in the sense that he was not in any way concerned with the problem under discussion; namely, the increased tuition. In fact, the president of defendant's school, California State College, admitted that in his opinion defendant's actions were not furthering the purpose of the demonstration. There was no one else among the large crowd who was attired in any uncon-

ventional manner. Moreover, the jury could have found that whatever political demonstration had been taking place earlier in the afternoon had terminated with the rain and the dispersion of the crowd.

It is defendant's contention that he comes within the exception to the flag desecration statute pertaining to political demonstrations because he now asserts that he was making such a demonstration. He testified that he wore a flag with a swastika on it because, in effect, he felt that the United States was becoming like Nazi Germany and he sat on the flag for the purpose of drawing attention to the fact that he was upset with the way liberty was going in the United States. However, his *credibility*, like those of all other witnesses, was for the jury and it was for the jury to determine what his actual purpose was in being so attired and acting in such a manner toward the flag. In view of the verdict, the Commonwealth is entitled to the inference that he was simply casting contempt upon the flag and trying to cause trouble and that he did not have any political motive and was not making a political demonstration. In view of the jury verdict, the Commonwealth is not bound to accept his explanation of his conduct, particularly in view of the other circumstances, namely, that he was not connected with the rally or demonstration as such and may have thought that as long as there was some type of a demonstration being conducted, he could immunize himself from his criminal conduct by using that occasion to desecrate the flag, claiming immunity as a political demonstrator.

Defendant relies on Commonwealth v. Haugh, 439 Pa. 212 (1970), where the Supreme Court held that where defendant and several others participated in a demonstration protesting the involvement of the United States in the Viet Nam war and exposed a flag of the United States on which were printed the words,

"Make Love, Not War, The New American Revolutionaries," they were participating in a political demonstration.

However, in that case, which was tried without a jury, the *trial court found as a fact that defendant was participating in a political demonstration* concerning a political issue and the matter before the court was whether that type of political demonstration was within the meaning of the statute. Here, we have no such finding of fact and on the contrary *the inference is that the jury by its verdict found that the defendant was not participating in a political demonstration.* Certainly the jury did not have to accept his explanation of why he conducted himself as he did.

*Did the court commit error in its charge or in its comments during the course of the trial?*

Defendant claims that the comments, questions and instructions of the court were more or less erroneous. An examination of the contention reveals that it relates to the instructions pertaining to whether or not defendant was involved with the purpose of the demonstration and whether or not the demonstration had ceased as well as with the court's refusal to instruct the jury at length on defendant's contention that his free speech was being violated.

In view of the fact that defendant was not apprehended for anything he said (in fact, there is no evidence in the record that he said anything), under the authorities discussed above on the issue of constitutionality, there was no need to become involved with a first amendment problem.

It is obvious that defendant misconstrues the role of the jury. The crux of the case was whether or not defendant was engaging in a political demonstration so as to be exempt from the statutory prohibitions. Defendant seems to feel that because *he said* that he was engaged in a political demonstration, this precludes

358

the jury from even considering any evidence to the contrary. In deciding whether or not he was engaged in a political demonstration, it was certainly relevant for the jury to consider that he was not involved with the particular demonstration; namely, protesting increased tuition at State schools and that this demonstration had apparently, or at least temporarily, terminated. The jury was entitled to learn of all the surrounding circumstances so that it could accept or reject defendant's contention and this necessarily concerned as one of the factors his involvement or noninvolvement with the particular purpose of the rally or demonstration.

If a person can desecrate the flag and by his bald assertion that he was making a political protest established this as a fact, then our flag desecration statute is meaningless. We do not feel that either the legislature in enacting this measure or the Supreme Court in interpreting it intended such an absurd result.

### ORDER

And now, May 15, 1972, defendant's motion in arrest of judgment and defendant's motion for a new trial are denied and the district attorney is directed to present defendant for sentence.