## S02A1081. BOYD v. THE STATE.
### (5753 SE2d 52)

BENHAM, Justice.

This appeal is from Derek O'Neal Boyd's conviction for felony murder.[1] He was indicted for malice murder, felony murder (aggravated assault), felony murder (possession of a firearm by a convicted felon), aggravated assault, and possession of a firearm by a convicted felon, all arising from his fatal shooting of Lamont Jones. The evidence at trial showed that Boyd sometimes gambled at the tire store of which Jones was a part owner. On the evening Jones was killed, Boyd had argued with him about the percentage the "house" claimed. After they argued, Jones told Boyd to leave the garage, and had Boyd's car removed from the shop. Boyd returned to the shop with a .45 caliber pistol in the waist of his pants, began to argue with Jones, then struck him. Boyd's pistol fell to the floor as he struck Jones. Witnesses differed on the next events, some saying both men scrambled for Boyd's gun, others saying Jones pulled his own gun and attempted to shoot Boyd. Boyd recovered his gun and fired several shots at Jones, hitting him once, fatally. A forensic pathologist testified that the path of the bullet in Jones indicated the shooter stood above him and shot downward. A single unexpended 9mm round was found on the floor of the garage, and the other owner of the tire shop later delivered to police a 9mm pistol he claimed to have found in the trash.

At trial, the jury asked the trial court what to do about counts on which they were not unanimous. With the agreement of counsel, the trial court asked the jury where it stood, discovering after a review of

---

[1] The crime was committed on May 1, 2000, and Boyd was indicted on July 18, 2000. After a jury trial on July 2-6, 2001, Boyd was sentenced on August 17, 2001, to life imprisonment for felony murder (possession of a firearm by a convicted felon). A motion for new trial filed August 24, 2001, by trial counsel and amended September 12, 2001, by new counsel was heard November 17, 2001, and was denied on November 20, 2001. Pursuant to a notice of appeal filed December 14, 2001, the appeal was docketed on April 3, 2002, and was submitted for decision following oral argument on July 8, 2002.

the verdict form that the jury had reached guilty verdicts on all counts other than malice murder, but had not considered the lesser offense of voluntary manslaughter. The trial court recharged the jury on murder and voluntary manslaughter, then sent the jury out with direction to reconsider all counts of the indictment. The jury eventually returned with the same verdict form which had been amended to show a verdict of guilty of voluntary manslaughter. After sentencing Boyd for felony murder, the trial court entered an order dismissing the malice murder charge because the jury had reached no verdict on it, dismissing the felony murder based on aggravated assault and the associated aggravated assault count as being inconsistent with the verdict of voluntary manslaughter, and merging the count charging possession of a firearm by a convicted felon into the felony murder conviction based on that felony.

1. Boyd contends that the trial court erred in sentencing him for felony murder. He argues that when the trial court discovered the jury had not considered voluntary manslaughter and sent the jury back with instruction to reconsider all the counts of the indictment, the verdicts that had already been reached on the other four counts of the indictment were voided. Thus, he contends, when the jury came back with the same verdict form amended to show a verdict of guilty of voluntary manslaughter, all the other verdicts were void and the only valid verdict was on voluntary manslaughter. Citing *Hinton v. State*, 223 Ga. 174 (4) (154 SE2d 246) (1967) (rev'd on other grounds, *Anderson v. Georgia*, 390 U. S. 206 (88 SC 902, 19 LE2d 1039) (1968)), Boyd argues that the only proper procedure would have been to require the jury to complete a new verdict form with new verdicts. *Hinton* does not, however, require that. The holding there was that when something other than a unanimous verdict appears, the correct procedure is to send the jury back to the jury room to arrive at a unanimous verdict, if possible. Id. While the trial court in that case did accede to the demand of defense counsel that the verdict be rewritten, this Court did not endorse that part of the process. Nor do we now. The trial court sent the jury back with clear instructions to consider all the counts of the indictment. Since Boyd offers nothing but conjecture to suggest the jury did not honor the instructions given to it, and since "we will not presume that the jury chose to disregard the trial court's direction to reconsider the evidence and any verdict they may have reached in light of the new instructions," (*Daniley v. State*, 274 Ga. 474, 475 (2) (554 SE2d 483) (2001)), we must consider that the verdicts subsequently published were reached by the jury in compliance with the trial court's instruction. Likewise, Boyd's argument that the trial court was obliged to order a mistrial upon discovering the jury had not considered voluntary manslaughter is based on conjecture that the jury could not

fairly reconsider the charges against him. For the same reasons we find the verdicts valid, we find no abuse of discretion in denying the mistrial. Id.

2. Boyd concedes that sentencing him for felony murder with possession of a firearm by a convicted felon is consistent with this Court's holdings in *Mosley v. State*, 272 Ga. 881 (3) (536 SE2d 150) (2000), that the felony underlying a charge of felony murder must be one "that is 'dangerous per se' or by its circumstances creates a foreseeable risk of death." He contends nonetheless that the trial court erred in doing so. Citing *Apprendi v. New Jersey*, 530 U. S. 466 (120 SC 2348, 147 LE2d 435) (2000), Boyd argues that because the trial court did not submit to the jury as a specific question on the verdict form whether the status felony of possession of a firearm by a convicted felon, under the facts of this case, created a foreseeable risk of death, the sentence for felony murder cannot stand. *Apprendi* does not support that argument. That case involved a hate crime sentence enhancement statute which permitted the trial judge to determine, for sentencing purposes, whether a particular offense was motivated by racial bias. The Supreme Court held that the statute was unconstitutional because "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. Since the issue before us involves neither sentence enhancement nor findings by a judge rather than a jury, the holding in *Apprendi* is inapplicable to this case.

3. In complaining that his trial counsel provided ineffective assistance, Boyd states four ways in which he contends trial counsel's performance was deficient: failure to visit the crime scene; failure to interview the medical examiner prior to trial; failure to interview the State's firearms expert; and failure to consult with and retain a firearms and crime scene expert. Boyd asserts that each of those failures undermined the effective presentation of his claim of self-defense.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. [Cit.] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [Cit.] The trial court's determination with respect to effective assistance of counsel will be affirmed unless the trial court's findings are clearly erroneous. [Cit.]

*Hamilton v. State*, 274 Ga. 582, 587-588 (13) (555 SE2d 701) (2001).

With regard to trial counsel's failure to visit the crime scene, Boyd argues that had counsel done so, he would have had a better understanding of the area and would have seen that the layout of the building corroborated Boyd's testimony. Trial counsel testified at the motion for new trial hearing that he did not consider a scene visit crucial in this case because he had photographs of the scene which he reviewed with Boyd, and because there was nothing unique about the scene that would win or lose the case. Trial counsel considered more important the establishment of some delay between Boyd's initial assault of Jones and the escalation of the conflict to gunfire so that Boyd could claim self-defense.

Trial counsel did not interview the medical examiner until the day of trial. Boyd contends that had counsel done so, evidence could have been developed to refute the State's theory of the case, that Boyd stood over Jones as he lay on the floor where Boyd had knocked him, and shot down at him. Boyd also claims that an earlier interview with the medical examiner would have alerted trial counsel to the fact that the entrance wound was unusually large and irregular, which could have led to the employment of an expert to testify that the entrance wound's shape and size indicated that the wound was caused by a ricochet, thus further refuting the theory that Boyd stood over Jones and shot him. Trial counsel testified that he did not consider the autopsy or the medical examiner's testimony to be crucial since the fact that Boyd shot and killed Jones was not contested. Furthermore, he testified, he did not wish to have the jury dwell on the testimony of the medical examiner and the autopsy photographs.

Boyd contends that had trial counsel interviewed the State's firearms expert witness, he would have been alerted to issues which would have prompted a reasonable attorney to consult and retain a firearms expert for the defense. Had trial counsel done so, Boyd asserts, the defense could have presented evidence based on the location of shell casings from Boyd's gun that supported his testimony that he fired several shots at Jones as he fled to avoid being shot by Jones. In addition, Boyd claims, an expert could have testified that the single round of 9mm ammunition found on the floor was the result of Jones attempting to cock his pistol preparatory to shooting Boyd. Trial counsel testified that he considered the ballistics testimony and the evidence regarding the 9mm pistol to be favorable to the defense, helping establish that Jones was armed and attempted to shoot Boyd, prompting Boyd to shoot him in self-defense. As with the crime scene visit, trial counsel testified that he believed the firearms issues were not crucial in that they did not disprove the defense that Boyd shot only in self-defense.

The test for reasonable attorney performance "has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. [W]e are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately." [Cit.]

*Stansell v. State*, 270 Ga. 147, 150 (2) (510 SE2d 292) (1998). It is apparent from trial counsel's testimony on motion for new trial that the trial court was presented with evidence from which it could conclude that trial counsel's investigation was reasonable in light of the evidence and the defense being asserted. " 'The fact that appellant and his present counsel now disagree with the difficult decisions regarding trial tactics and strategy made by trial counsel does not require a finding that appellant received representation amounting to ineffective assistance of counsel.' [Cit.]" *Callendar v. State*, 275 Ga. 115, 117 (3) (a) (561 SE2d 113) (2002). Based on the evidence presented at the hearing, the trial court was authorized to find as fact that what Boyd criticizes in trial counsel's performance was due to a choice of trial strategy, not a result of inadequate preparation or presentation.

In reviewing the resolution of a claim of ineffective assistance of counsel, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. [Cit.]" *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000). Since the trial court here simply denied the motion for new trial without stating its findings of fact, we operate from the premise that the trial court resolved the fact questions adversely to Boyd. See *Kilpatrick v. State*, 252 Ga. App. 900 (1) (557 SE2d 460) (2001). As we have noted, the evidence authorized a finding that counsel's conduct was attributable to strategy, not lack of preparation. We would, therefore, have approved such a finding as not being clearly erroneous. *Suggs v. State*, supra. "[A] reviewing court 'must be "highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." (Cit.)' [Cit.] Applying those standards, we are persuaded the trial court did not err in rejecting [Boyd's] complaints of ineffective assistance of counsel. . . ." *Hamilton v. State*, supra, 274 Ga. at 589-590 (13).

4. Evidence that Boyd fatally shot the victim and that Boyd had previously been convicted of a felony was sufficient to authorize a rational trier of fact to find him guilty beyond a reasonable doubt of felony murder with possession of a firearm by a convicted felon as the

underlying felony. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Sims v. State*, 265 Ga. 35 (453 SE2d 33) (1995).
*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 25, 2002.

*W. Michael Moran, John A. Pickens*, for appellant.
*Paul L. Howard, Jr.*, District Attorney, *Bettieanne C. Hart, Amira S. AbuBakr*, Assistant District Attorneys, *Thurbert E. Baker*, Attorney General, *Jill M. Zubler*, Assistant Attorney General, for appellee.